**Julius DOOCHIN, Individually and d/b/a Julius Doochin Fabrication, Plaintiff/Counter–Defendant/Appellee,**

v.

**UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant/Counter–Plaintiff/Appellant,**

and

**Fidelity and Guaranty Insurance Underwriters, Inc., Defendant/Counter–Plaintiff.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 6, 1993.

Application for Permission to Appeal Denied by Supreme Court May 3, 1993.

---

Michael J. Vetter, Brewer, Krause & Brooks, Nashville, for defendant/counter-plaintiff/appellant.

James H. Porter, Warren M. Smith, Williams & Smith, Nashville, for plaintiff/appellee.

## OPINION

CANTRELL, Judge.

In this action, on a fire insurance policy, the jury allowed recovery and awarded the insured the 25% penalty pursuant to Tenn. Code Ann. § 56-7-105. On appeal the insurer raises issues concerning the sufficiency of the evidence to support the verdict, the admissibility of evidence, and the inflammatory remarks of opposing counsel in final argument. We reverse the award of the statutory penalty and remand for a new trial on that issue.

### I. Facts and Procedural History

On December 28, 1988, a fire destroyed a fabrication plant in Nashville owned and operated by the plaintiff, Julius Doochin. Three trained investigators concluded that the fire was intentionally set. The record shows that the plant was locked by the superintendent at 4:07 p.m.; an eye-witness observed smoke coming from the building at approximately 4:27 p.m.; and the fire department arrived at the scene at 4:42 p.m., at which time the fire could not be brought under control. Although the building was equipped with a burglar alarm, the alarm did not sound until activated by the fire at 4:35 p.m. There was no evidence of a forced entry, and there was nothing stolen from the building.

The insurer, after an investigation, concluded that the fire was a result of arson and that the evidence pointed to Mr. Doochin's superintendent, a 40-year employee,

who left the building at 4:07 p.m. The insurer also concluded that Mr. Doochin was having cash flow problems in 1988 and that seven fires had occurred on his properties in that year, some under suspicious circumstances. Based on the results of its investigation, the insurance company denied the claim. Mr. Doochin then filed this action. After a lengthy trial the jury returned a verdict covering the amount of the loss plus a 25% bad faith penalty.

## II. The Sufficiency of the Evidence

■ At the outset, we note that the question of whether an insurance company should pay the statutory penalty is ordinarily a question of fact for the jury. *Mason v. Tennessee Farmers Mut. Ins. Co.,* 640 S.W.2d 561, 567 (Tenn.App.1982). Also a question of fact is the arson defense raised by the insurance company in response to Mr. Doochin's action for recovery under the policy. *Cf. Interstate Life & Accident Ins. Co. v. Gammons,* 56 Tenn. App. 441, 444, 408 S.W.2d 397, 398 (1966). As to both issues, we find that there is material evidence in the record on both sides. That is to say, the issue was properly submitted to the jury for its determination. If no errors occurred during the trial, or if any errors occurred but were harmless, the judgment based on the verdict should stand. Tenn.R.App.Proc. 36(b).

## III. The Admissibility of Plaintiff's Sworn Statements

■ The insurance company asserts that it should have been able to introduce as exhibits two lengthy sworn statements taken from Mr. Doochin prior to trial. The company insists that it was entitled to introduce the statements themselves as part of its proof on the issue of bad faith.

The trial judge ruled that the statements could not be made exhibits but that the attorney for the insurance company could ask Mr. Doochin about the statements or could read the entire document into the record.

■ We think the trial judge was correct. Although Tenn.R.Civ.Proc. 32.01(2) says the deposition of a party may be used

for any purpose, we think that means the evidence contained in the deposition may be read into the record if the evidence is otherwise admissible. The rule does not suggest that the deposition of a party may be made an exhibit at the trial. *See Nelms v. Tennessee Farmers Mut. Ins. Co.,* 613 S.W.2d 481, 484 (Tenn.App.1978).

Even if incorrect in our reading of the rule, we think the decision to exclude the statements was within the court's discretion under Tenn.R.Evid. 403. Under Rule 403, relevant evidence may be excluded if its admission would cause undue delay or a waste of time. To ask each juror to read the 350 pages comprising Mr. Doochin's statements would have unduly delayed the trial.

## IV. Cross–Examination of Mr. Doochin

■ The insurance company alleges that the trial judge committed reversible error when, in the course of the trial, she sustained an objection to cross-examining Mr. Doochin on his prior involvement with the fire marshal's office. At the start of the trial, the trial judge sustained a motion in limine and ordered the defendant's attorney not to bring up the fact that fires had previously occurred on property owned by Mr. Doochin. During Mr. Doochin's cross-examination, the following colloquy took place:

Q  Now, do you still deny that before that statement [the March examination under oath] you had any knowledge that this was being investigated as an arson?

A  I said I don't see it was arson. You just stated it was arson. I don't see how it could be.

Q  But you knew that it was being looked into as an arson?

A  No, I knew it was being looked into, not as an arson. I knew it was being looked into, yes.

Q  It was being looked into by the fire marshal's office, correct?

A  Right, but I've never had any experience with the fire marshal's office before something like this.

Q So you've never had any experience with the fire marshal's office for anything like this?

A No, I didn't say that. Anything like this, no, I haven't.

Q So you have never had the fire marshals dealing with you; is that your testimony?

  *   *   *   *   *   *

A No, that's not my testimony.

  *   *   *   *   *   *

Q Is it your testimony that you have never dealt with the fire marshal's office in this type of situation before?

A No, never been in this type of situation with the fire marshal's office.

Q So is it your—let me ask it this way, what dealings, if any, have you had?

At this point plaintiff's counsel objected, and the trial judge asked the jury to retire. The trial judge then conducted a hearing, consuming approximately forty pages of the transcript, on whether Mr. Doochin had opened the door to questions concerning any prior involvement with the fire marshal's office. Finally, the court ruled that the matter should be closed by asking Mr. Doochin, in the presence of the jury, the following question:

> THE COURT: ... I think we stopped at the point where I think the question of Mr. Doochin was, had you had any previous dealings—well, I think the last answer that Mr. Doochin gave was that he had had no previous dealings with the fire marshal's office on matters of this sort. Mr. Doochin, could you just explain that, what you meant by that?
>
> THE WITNESS: Well, I think that some of the fire marshal's office, who I don't know exactly, had made some remark about this was a suspicious fire. Well, suspicious fire, I've got this thing that I'm under suspicion and I wanted to clear my name and if anything could possibly be done. That had never happened to me before. It was a complete fire, no question about that.

No other questions concerning Mr. Doochin's prior statement or his other involve-ment with the fire marshal's office were allowed.

We think the trial judge ruled properly. The whole controversy was over the interpretation of Mr. Doochin's answers on cross-examination: whether he had denied *any* dealings with the fire marshal's office where arson was suspected, or whether he had denied any dealings with the fire marshal's office where *he* was suspected of arson. In our opinion the question had such an inconsequential impact on Mr. Doochin's credibility that it was unnecessary to open up the whole issue of previous fires. *See* Tenn.R.Evid. 608.

## V. Evidence of Mr. Doochin's Prior conversation with an Employee

The trial judge also excluded questions directed toward Mr. Doochin and any extrinsic evidence concerning a conversation that Mr. Doochin allegedly had with a former employee in 1988. In that conversation, Mr. Doochin allegedly tried to get the employee to burn a building owned by Mr. Doochin. The only evidence of the conversation is contained in this excerpt from the former employee's deposition:

Q Finally, if Mr. Doochin has stated that he never has asked anyone to burn a standing building, is he telling the truth?

A No.

  *   *   *   *   *   *

Q If Mr. Doochin said he's never offered to pay someone to burn a standing building, is he telling the truth?

A No.

  *   *   *   *   *   *

Q Did Mr. Doochin offer to pay you to burn a standing building in early 1988?

A Yes, he did.

Q Was the address of that building 310 Hume Street in Nashville, Tennessee?

A Yes, it was.

Q Was the piece of property located on Hume Street a piece owned by Mr. Doochin at that time?

A Yes.

Q Was Mr. Doochin joking when he asked you to burn this building?

A  No.

Q  In fact, did you tell him that you didn't want to have anything to do with burning that building?

A  Yes, I did.

We note that the property discussed in the statement is not related to the property involved in this action. Also, there is no indication that the property discussed was insured or that Mr. Doochin had any other bad motive for having it burned.

■■■ Mr. Doochin did not testify on direct examination about the conversation although he had denied in his deposition that the conversation occurred. The statement of the witness therefore is not a statement inconsistent with one made by Mr. Doochin *at the trial.* Even if it were Mr. Doochin's own statement, it would not be a prior inconsistent statement under Tenn.R.Evid. 613, since he had not mentioned the conversation in his trial testimony. *See Johnson v. State,* 596 S.W.2d 97, 103 (Tenn.Crim.App.1979). Although the rule does not define an inconsistent statement as one inconsistent with a statement offered at trial, we think that is all it can mean.

If the proffered statement is not a prior inconsistent statement, then reversal of the trial judge's decision to exclude it is less likely. Under both Rule 404 or 608 of the Tennessee Rules of Evidence, the trial judge may exclude the evidence if the danger of unfair prejudice outweighs its probative value.

■■■ We think that in this case any probative value is outweighed by the potential prejudice. Taking the statement as true it does not prove anything negative about Mr. Doochin except that he lied about a conversation which is not even in existence. But, the implication that Mr. Doochin was in the habit of burning down buildings on his property is extremely prejudicial. Therefore, we think the statement was properly excluded.

### VI.  The Plaintiff's Undisclosed Witnesses

■■■ The plaintiff called two rebuttal witnesses who names had not been disclosed prior to trial. They were called to rebut the testimony of a defense witness who, for the first time at the trial, testified that he thought the fire had been started by Mr. Doochin's superintendent. In his pre-trial deposition the witness said that he had not drawn any conclusions about who had set the fire. The court found as a fact that the witness had changed his testimony.

One of the rebuttal witnesses was called as a character witness for the superintendent. The other witness was called as an expert to rebut the conclusions drawn by the defense witness who implicated the superintendent. There is nothing to indicate that either of the witnesses had been contacted prior to the time the defense witness changed his testimony.

We see nothing wrong with the court allowing the testimony of these two rebuttal witnesses. Even if the names of the two witnesses had been withheld in violation of the discovery rules or local rules of court, the decision to allow them to testify was within the discretion of the trial judge. *Strickland v. Strickland,* 618 S.W.2d 496, 501 (Tenn.App.1981).

The expert's testimony is also attacked on the grounds that he was not qualified and that he did not have a license as a private investigator pursuant to Tenn.Code Ann. § 62–26–204(a).

■■ As to his qualifications, the witness testified that he had been employed by the Metropolitan Fire Department in Nashville for 37 years and during the last 12 years preceding his retirement he had been the fire marshal. He was a full-time arson investigator for the fire department from 1963 until he retired in 1979. He had attended seminars and had taught at such seminars concerning fire and arson investigation. He had also published articles on the subject in trade journals.

We think the witness was qualified to give his opinion on the various aspects of the fire's progression. *See* Tenn.R.Evid. 702.

■■ Tenn.Code Ann. § 62–26–202(5)(D) defines an "investigations company" as one

(among others) that obtains or furnishes information with reference to the cause or responsibility for fires. A person who performs any of the duties for an investigations company is required to have a license. Tenn.Code Ann. § 62–26–204(a).

The appellant cites no authority for the position that a person who comes within the definition of the Act but does not have a license is disqualified as a witness. We have our doubts about the application of the statute to the witness, but even if the statute applies to him, a license is only one factor affecting his expertise. Therefore, we find this issue to be without merit.

## VII. Misconduct of Plaintiff's Lawyer

In closing, plaintiff's counsel made the following argument to the jury:

You know, you might ask, you might ask what does the insurance company have to gain by denying this claim. Okay, maybe they get out of paying it, maybe they get out of paying it, but what else do they have to gain? $264,700. It's been 825 days since they denied this claim to today—to today. I'm going to tell you at ten percent compounded daily—

MR. VETTER: Your Honor, I'm going to object. He has no—

THE COURT: He has a right to make whatever argument he wants to on this point.

MR. PORTER: At ten percent compounded daily for 825 days USF & G would have made $332,770 by keeping Mr. Doochin's money, and if you take that figure and you multiply that by all the claims they deny all over this country, all of the three-year waits that people have to go through before they get their case to a jury, you see, you see what they have to gain. A tremendous amount of money, a tremendous amount of money, because that money is working for them, and even if they end up having to pay Julius Doochin his claim they still made $332,770. That's in one case. That's in one case. How many more do they deny every year? This is a big insurance company. 500, 5000? You

speculate and do the mathematics. And you know, I guess they get away with some of them. I guess they don't even have to pay the claim on some of them.

THE COURT: Mr. Porter, I allowed you to make the argument, but you just can't go too far on this argument.

MR. PORTER: Unfortunately, there's really not a lot we can do in this courtroom about that kind of thing and there's not anything we can do in this courtroom about the pain and the stain on the reputation of Julius Doochin, James Miller, James Brown, Wilma Armstrong. There's nothing that we can do about that. These people have lived if [sic] this community all of their lives, built their reputations, built their businesses. We can't do anything to correct the stain on that reputation that's been caused by the allegation made by this insurance company in this case.

But you, you can strike one small blow for justice in this case. You can return a verdict for Mr. Doochin for his $264,700 plus interest at ten percent, and that's not compounded daily and it doesn't come to anything like $333,000. It comes to about sixty something thousand, but you don't have to compute that, you can return him a verdict for his loss, for the interest, and you can award a bad faith award of 25 percent of the $264,700, and that's the maximum that the law allows you to do, that's the maximum the law allows you to do. And we ask you, after considering everything you've heard, to do exactly that. I thank you for your attention. It's been a long case, it's a very, very important case for my client. Thank you.

There can hardly be any doubt that the argument was improper. The statements made by counsel for the plaintiff contained inaccurate, inflammatory assertions without any basis in the record. Any reasonable person would have to conclude that the only purpose for making such an argument was to prejudice the jury against the defendant.

Whether such lawyer misconduct requires a new trial is generally left to the

discretion of the trial judge. *J. Avery Bryan, Inc. v. Hubbard,* 32 Tenn.App. 648, 658, 225 S.W.2d 282, 287 (1949). Where the trial judge overrules a motion for a new trial based on improper argument, this court has required a new trial only where it felt that the argument was "unwarranted and made for the purpose of appealing to passion, prejudice and sentiment, which cannot be removed by the trial judge's sustaining an objection of opposing counsel, or unless we affirmatively find that such argument affects the results of the trial." *Guess v. Maury,* 726 S.W.2d 906, 913 (Tenn.App.1986). The appellate courts have been more inclined to reverse the judgment where counsel's misconduct has been persistent. *See English v. Ricks,* 117 Tenn. 73, 78, 95 S.W. 189, 190 (1906); *Prewitt–Spurr Mfg. Co. v. Woodall,* 115 Tenn. 605, 609, 90 S.W. 623, 624 (1905).

In this case, the offending conduct was not part of a pattern; it happened only once, however, it occurred during closing argument, a critical point in the trial just before the case went to the jury. The record does not contain any instruction by the trial judge in an attempt to cure the erroneous impression left in the minds of the jurors. However, at the beginning of the trial and again before the closing arguments, the trial judge did instruct the jury that the lawyers' arguments were not evidence. As a consequence, of the trial judge's failure to give a curative instruction, the jury retired with the impression that the defendant would show a profit from not paying the claim even if the jury returned a verdict for the entire loss plus pre-trial interest in the amount of 10% and the 25% penalty. In addition, the jury was encouraged to speculate that the insurance company repeated this conduct 500 or 5000 times a year.

We think that the conduct of the plaintiff's attorney requires a new trial on the question of the 25% statutory penalty. However, we do not find that a new trial on the entire case is necessary. The misconduct of the plaintiff's attorney was directed toward the bad faith penalty. As stated earlier in this opinion, on the issue of payment under the policy, both sides presented material evidence which was properly weighed by the jury. But, as to the issue of the penalty, it is more likely than not that the jury was misled into the belief that, despite having to pay the penalty, the defendant would still come out ahead.

The judgment for the statutory penalty is reversed. In all other respects the judgment below is affirmed. The cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee.

TODD, P.J., and LEWIS, J., concur.