IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 7, 2001 Session

## STATE OF TENNESSEE v. MARVIN WOODS

**Direct Appeal from the Circuit Court for Hardeman County**
**No. 6403     Jon Kerry Blackwood, Judge**

---

**No. W2001-00316-CCA-R3-CD - Filed October 5, 2001**

---

The defendant was convicted of the introduction of contraband into a penal institution, a Class C felony, for smuggling marijuana into the prison where he worked. The trial court sentenced him as a Range I, standard offender, to three years in the Department of Correction, with the sentence suspended, and the defendant placed on supervised probation for three years. Following the denial of his motion for a new trial, the defendant filed a timely appeal as of right to this court, alleging that the trial court erred in allowing a prior inconsistent statement to be introduced, in its instructions as to the statement, in concluding that the State sufficiently proved the chain of custody, and in ruling that trial counsel had not been ineffective. Based upon our review of the record and of applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JOE G. RILEY, JJ., joined.

C. Michael Robbins, Memphis, Tennessee (on appeal), and Jeannie Kaess, Bolivar, Tennessee (at trial), for the appellant, Marvin Woods.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Marvin Woods, was employed as a correctional officer at the Hardeman County Correctional Facility, a private prison facility in Whiteville, Tennessee, operated by Corrections Corporation of America ("CCA"). He was caught smuggling marijuana into the facility on the morning of May 14, 1999, and was subsequently convicted of the introduction of contraband into a penal institution, in violation of Tennessee Code Annotated Section 39-16-201(a)(1). In a timely appeal to this court, the defendant raises four issues, which he presents as follows:

I. Did the trial court err by departing from the language of the pattern instruction, T.P.I. 42.06, in its instruction to the jury regarding an alleged prior inconsistent statement by defendant?

II. Did the trial court err by permitting the prosecution, under the guise of laying a foundation for impeachment of the defendant by proof of a prior inconsistent statement, to ask a question of the defendant on cross examination when the trial court and [a]ll parties to the trial knew that the defendant had not made such prior statement?

III. Did the trial court err by overruling the defendant's objection as to the sufficiency of the chain of custody proof?

IV. Was the defendant denied the effective assistance of counsel at his trial?

After a careful review of the record and of applicable law, we conclude that the trial court did not err in admitting the prior inconsistent statement for impeachment purposes, or in instructing the jury regarding the purpose for which the statement was admitted. We further conclude that the trial court did not err in allowing the objected exhibit into evidence, the State having shown a proper chain of custody for its admission, and that the defendant failed to demonstrate that he was denied the effective assistance of trial counsel. Accordingly, we affirm the judgment of the trial court.

## **DISCUSSION**

The defendant's trial was held on February 4, 2000, before a Hardeman County Circuit Court jury. Andrew Jones, the Hardeman County Correctional Facility assistant shift supervisor on duty on the morning of May 14, 1999, testified that the defendant came into the prison at the beginning of his shift carrying a McDonald's bag. When Jones asked to see the contents of the bag, the defendant set it on the floor and brought out two Styrofoam trays, opening them to show Jones that they contained breakfast food. Jones said that he asked what else was in the bag, and the defendant told him "nothing." However, when he looked in the bag, Jones saw two clear plastic bags containing a green leafy substance.

Jones said that he then used his radio to call the shift supervisor, Rosa Robinson, who was standing a few steps away, to come to his position to check the bag. He also talked to the administrative duty officer, who told him to call the Whiteville Police Department. At that point, the defendant backed to the door, said, "You can't hold me, I'm leaving," and left the prison.

On cross-examination, Jones denied that he had brought the marijuana into the prison in an effort to "frame" the defendant and denied that he had made any comments of a sexual nature

-2-

towards the defendant. He also denied that he had ever asked the defendant to go drinking or dancing with him. He testified that he had not had any personal problems with the defendant, and had not been aware of the defendant's having filed a grievance against him with the shift supervisor, Jeremy Hensley. However, he did acknowledge that, prior to the incident of May 14, Hensley had called him into a meeting to ask what "the beef" was between him and the defendant.

Officer Steve Cox of the Whiteville Police Department, who responded to the call to the prison facility, testified that he did not see the defendant at the prison, but that he later spoke to him at the Hardeman County Sheriff's Department, where he was transported after his arrest. Cox said that Jones handed him a McDonald's bag when he arrived at the prison. Inside the bag, underneath a white Styrofoam food tray, he found two clear plastic bags of what appeared to be marijuana, which he secured as evidence. He later transported the evidence to the Tennessee Bureau of Investigation ("TBI") Crime Laboratory in Jackson for drug analysis.

Shortly after the defendant left the prison, Deputy Anthony Bynum of the Hardeman County Sheriff's Department spotted him in his car at a stop sign in Bolivar, Tennessee. Bynum testified that as he drove past the defendant's vehicle, the defendant ducked down behind the steering wheel, as if trying to hide from sight. Bynum turned his patrol car around and watched the defendant quickly enter the parking lot of a McDonald's restaurant through the front entrance and then exit through the back entrance. After taking the defendant into custody, Bynum transported him to the Hardeman County Sheriff's Department.

Kay Sheriff, the regional crime laboratory supervisor of the TBI Crime Laboratory in Jackson, testified that she received a manila evidence envelope from Officer Cox. Her notes indicated that the envelope contained a CCA identification card with the defendant's name and photograph, a field drug test kit, and two plastic bags of green leafy plant material. She tested the plant material, and identified it as 103.6 grams of marijuana.

In his trial testimony, the defendant denied having brought the marijuana into the prison on May 14, 1999. The defendant testified that Jones pulled him aside as he was entering the prison to begin his shift, waiting until the other employees had departed to their duty stations and they were alone, before asking him what was in his McDonald's bag. The defendant suggested that Jones planted the drugs in retaliation for his having filed a grievance, two weeks earlier, against Jones. He said that he had complained to Supervisor Hensley about sexual comments that Jones had made to him, and that Hensley had had a talk with Jones about it. He admitted on cross-examination, however, that he did not have a copy of the grievance form that he claimed to have filed. He explained that he had left the prison after the drugs were discovered because his "mind went blank," and said that he could not remember having attempted to hide from Officer Bynum's view. He denied that he had admitted to Officer Cox that he had brought the drugs into the prison on the day of his arrest.

The State called Officer Steve Cox in rebuttal, who testified that after the defendant was arrested and brought to the Hardeman County Jail, Cox read him his rights, and the defendant told him that he had taken the drugs into the facility.

## ANALYSIS

### I. Prior Inconsistent Statement

The defendant contends that the trial court erred in allowing Officer Cox to testify that he had admitted to bringing the drugs into the prison on May 14, 1999. During his testimony at the motion for new trial, the defendant said that he admitted instead to having brought drugs into the prison on two prior occasions. Thus, he argues that his admission to Officer Cox did not constitute a prior inconsistent statement to his testimony at trial in which he denied admitting to Officer Cox that he had brought drugs into the facility on the day of his arrest. The State responds by arguing that the defendant has waived the issue for failing to raise a timely objection at trial to the rebuttal testimony of Officer Cox and, further, that the defendant's statement, as related by Officer Cox, was an accurate and fair paraphrase of the defendant's admission, and that the trial court did not err in allowing it to impeach the defendant's testimony at trial.

The resolution of the issue as to the defendant's statement requires a review of the chronology of the dispute.

After opening arguments in this case, the trial court held a hearing outside the presence of the jury to consider the defendant's motion in limine to suppress the statement he allegedly had made to Officer Cox. At this hearing, the defendant's trial counsel told the court that the State had notified her of the defendant's statement only the previous day, via a message left on her answering machine, the message being that the defendant had admitted to Officer Cox "that he had brought drugs into the prison on two other occasions." Defense counsel then asked that the statement be excluded because it had not been earlier provided to the defense, although the trial court had ordered disclosure pursuant to Tennessee Rule of Criminal Procedure 16, and that the statement was inadmissible as proof of prior bad acts, in violation of Tennessee Rule of Evidence 404(b). Immediately after trial counsel finished speaking, the prosecutor offered a correction, informing the trial court that the defendant's statement had not been that he had done it twice before, as characterized by defense counsel, but rather, that "this was only the second time he had done it." The prosecutor went on to announce that the State intended to use the defendant's statement only in rebuttal, and that he would phrase his question to Officer Cox in such a manner as to eliminate any reference to the defendant's prior bad acts. Defense counsel did not protest the prosecutor's correction of the statement, and there was no further discussion concerning which words the defendant had used.

Although the defendant asserts on appeal that differing interpretations might be made of the word "it" in the prosecutor's phrase, "This was only the second time he had done it," the trial court

concluded, after hearing the exchange between the prosecutor and defense counsel, that the defendant's statement could only be used, if at all, on rebuttal following the defendant's testimony.

Thereafter, during the State's cross-examination of the defendant, the following exchange occurred:

> Q. All right. Did you or did you not tell Officer Cox that you brought the drugs into the facility?
>
> A. No, sir, that's not correct.
>
> Q. Officer Steve Cox of Whiteville Police Department, there at the Hardeman County Jail. Did–are you denying that you told him, upon your arrest that day for bringing drugs into the facility, that you were the one that brought those drugs into the facility?
>
> A. No, sir. I did not tell Mr. Cox that, sir. No, sir.

With no objection made by the defendant, the State called Officer Steve Cox in rebuttal, where the following exchange took place:

> Q. Officer Cox, you may have testified about this and I forget, but following the arrest of [the defendant] on May 14th, 1999, did you have occasion to see him at the Hardeman County Jail?
>
> A. Yes, I did.
>
> . . . .
>
> Q. All right. And did you have an opportunity to read him what are commonly known as his Miranda rights?
>
> A. Yes, sir.
>
> Q. And did he appear to understand them?
>
> A. Yes, sir.
>
> Q. And listen carefully to my question, Officer Cox.
> Did [the defendant] tell you that he had taken the drugs into the facility?
>
> A. Yes, he did.

Officer Cox admitted on cross-examination that he had not made a written record of the defendant's statement. Since he was not called to testify at the hearing on the motion for a new trial, the only information in the record regarding this statement is the prosecutor's explanation to the court as to its contents and the rebuttal testimony of Officer Cox. Subsequently, the defendant testified at the hearing on the motion for new trial that Cox actually asked if he had done it before, to which he had answered, "[Y]es, on two other occasions, but not today."

The arguments against the admissibility of Officer Cox's rebuttal testimony are based on the defendant's assertion that the State incorrectly paraphrased his statement, altering it into one that he did not make. Amplifying on this contention, he argues that "it is clear that no one at the trial thought the defendant ever made a direct statement of admitting to this offense. If he had, there would have been no need for the prosecutor to 'craft' a new statement." In attempting to elicit a concession from defense trial counsel that this contention was correct, defense appellate counsel asked her during the hearing on the motion for new trial:

> Q. In other words because he told you he did this twice before, you inferred that he – that he did it this time?
>
> A. No. Because he was charged with bringing drugs in on May 14th, and we were talking about bringing drugs in on May 14th, and he said that he had done it two times before. In that context, he admitted he brought it in that day, and he had done it two prior times.

We believe that this is a reasonable interpretation by trial defense counsel of the import of the defendant's statement. The commonsense meaning of the defendant's statement, as related by the prosecutor, that "it was the second time he had done it," is that he smuggled marijuana into the prison on the day that he was arrested as well as one other time. The context in which the defendant made his statement to Officer Cox was that he was questioned after he had been stopped at the prison checkpoint, accused of smuggling marijuana, suddenly left the scene, and then taken into custody. Given this context, we disagree that there is any ambiguity in the word "it" as the defendant asserts on appeal.

The defendant's arguments regarding the statement also overlook the fact that the vehicle for getting the statement before the jury was not as a stipulation, agreed upon by the parties, read by the prosecutor and consisting of the prosecutor's understanding as to its contents. Instead, Officer Cox was specifically asked, after being referred by a previous question to the defendant's May 14, 1999, arrest, whether the defendant told him "that he had taken the drugs into the facility." Officer Cox answered, "Yes, he did." The defense attempts to link the prosecutor's recounting of the statement with Officer Cox's rebuttal response to reach the conclusion that Cox simply "inferred that [the defendant] brought the drugs into the prison that day." However, the rebuttal question asked Officer Cox was unambiguous and his answer unequivocal. We decline to speculate that Officer Cox merely was inferring that the defendant had admitted smuggling marijuana into the facility on the day of his

arrest. This thesis could have been tested either during the cross-examination of Officer Cox or by questioning him at the hearing on the motion for new trial. Without such proof, we cannot accept the defendant's argument that Officer Cox, when asked if the defendant admitted taking the marijuana into the facility on the day of his arrest and answering, "Yes, he did," really was saying, "Yes, I inferred that he did."

It is without question that the trial court has discretion whether to admit rebuttal proof. See Neil P. Cohen et al., Tennessee Law of Evidence, § 6.11[10] (4th ed. 2000); State v. Kendricks, 947 S.W.2d 875, 884 (Tenn. Crim. App. 1996) ("[I]t is within the discretion of the trial court to permit the state, in a criminal case, to introduce in rebuttal even testimony which *should* have been introduced in chief.") (quoting State v. Cyrus Deville Wilson, No. 01C01-9408-CR-00266, 1995 WL 676398, at *5 (Tenn. Crim. App. Nov. 15, 1995)). In Sykes v. State, 572 P.2d 247, 248-49 (Okla. Crim. App. 1977), the court approved, in a prosecution for death resulting from child abuse, the use, on rebuttal, of the defendant's statement to the effect that he had caused the bruises on the child's body after he had testified in defense that the marks on the body were a rash, not bruises. In People v. Tofil, 188 N.W.2d 63, 65-66 (Mich. Ct. App. 1971), the prosecution was permitted to show, on rebuttal, that the defendant had denied being at the "Lucky Bar," the scene of a robbery, after he had testified on direct examination that he had been there that night.

As for the procedure whereby this statement was presented to the jury, it is clear that a prior inconsistent statement may be admissible to test the credibility of a witness.[1] See State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000) (noting that Tennessee cases "have consistently held that a prior inconsistent statement is admissible under the Rules of Evidence when the prior statement is used to impeach the credibility of a witness"). Rule 613(b) of the Tennessee Rules of Evidence provides, in pertinent part, that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Our supreme court has held that extrinsic evidence of a prior inconsistent statement is not admissible unless the witness "either denies or equivocates to having made the prior inconsistent statement." State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998).

In this case, the State laid the proper foundation for introduction of the prior inconsistent statement by specifically questioning the defendant on cross-examination as to whether he had admitted to Officer Cox that he had taken the drugs into the prison on the day of his arrest. The requirement for admission of the statement was met when the defendant unequivocally denied having made that statement. See id. There was no error, therefore, in allowing the State to introduce the prior inconsistent statement on rebuttal.

Additionally, we conclude that there was also no error in the redaction of the statement to eliminate the defendant's reference to a prior bad act. As stated by Neil P. Cohen et al. in Tennessee

---

[1] Although the statement was utilized as a prior inconsistent statement, as related by Officer Cox it was actually a confession even though the defendant denied having made it.

<u>Law of Evidence</u>, § 6.13[5][f] (4th ed. 2000) (footnote omitted): "If extrinsic evidence of a prior inconsistent statement is used, the trial court has the discretion to screen it and excise irrelevant or otherwise inadmissible portions. This will prevent the jury from being exposed to inadmissible proof." Thus, the trial court was correct in allowing that Officer Cox be questioned only about that portion of the defendant's statement which related to the offense with which the defendant was charged.

We have reviewed the two cases cited in the defendant's brief, and they do not alter the conclusions which we have reached regarding the rebuttal testimony as to the defendant's statement. In <u>James Carter v. State</u>, No. W1999-00799-CCA-R3-PC, 2000 WL 1664260 (Tenn. Crim. App. Oct. 23, 2000), <u>perm. to appeal denied</u> (Tenn. Apr. 9, 2001), the defendant argued that his trial counsel was ineffective because she had not cross-examined at his second trial a prosecution witness with a prior inconsistent statement from his first trial. However, this court noted that what the defendant in <u>Carter</u> was describing as a prior inconsistent statement actually was only a representation by the prosecutor as to what the testimony of the witness would be. Since the first case ended in a mistrial before that witness testified, there was no "statement" with which to impeach the testimony of the witness at the second trial. Likewise, in <u>Doochin v. U.S. Fidelity & Guar. Co.</u>, 854 S.W.2d 109, 114-15 (Tenn. Ct. App. 1993), the court of appeals determined that, in a trial regarding a building destroyed by fire, the plaintiff could not be impeached, and no extrinsic proof about it presented, as to a statement allegedly made by the plaintiff to a former employee, soliciting the latter to commit arson, when the statement was inconsistent with the plaintiff's deposition testimony but not his trial testimony.

These cases are not relevant to the instant case for, unlike in <u>Carter</u>, the defendant had actually made a prior statement, according to Officer Cox, and which, unlike in <u>Doochin</u>, directly contradicted the defendant's trial testimony.

Thus, for these reasons, we conclude that the trial court was correct in allowing rebuttal testimony as to the defendant's statement to Officer Cox. We disagree with the defendant's assertion that the statement, as related by the prosecutor, was ambiguous as to whether the defendant had smuggled marijuana into the prison on the day of his arrest. Additionally, the question asked Officer Cox about the statement, and his response, cannot be parsed to reach the defendant's conclusion that Cox was merely testifying as to what he inferred from the defendant's words.

This assignment is without merit.

## II. Jury Instruction

The defendant also contends that the trial court erred by failing to issue the standard pattern jury instruction regarding his prior inconsistent statement. He argues that the trial court's instruction altered the pattern jury instruction, which states that the jury is permitted to use the prior inconsistent statement only to test the credibility of the witness, into an affirmative statement that a prior inconsistent statement affects the credibility of the witness, regardless of whether or not the jury

believes his testimony. The State disagrees, arguing that the trial court's instruction was an accurate statement of the law regarding the use of prior inconsistent statements.

A defendant has a constitutional right to a full, complete, and correct charge of the law. State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). When a defendant alleges prejudicial error in the trial court's charge to the jury, the appellate court must consider the charge as a whole to determine if it fairly defines the issues involved and does not mislead the jury. State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998). "A charge should be considered prejudicially erroneous if it fails to fairly submit the legal issues or if it misleads the jury as to the applicable law." Id. (citations omitted).

Immediately after Officer Cox testified that the defendant admitted having brought the drugs into the prison on the day of his arrest, the trial court issued the following instruction to the jury: "Ladies and gentlemen, the purpose of that question is not to prove the fact of the matter asserted in the statement, but it goes to show or to effect [sic] the credibility of the defendant, whether or not you believe or not believe the defendant."[2]

The Tennessee pattern jury instruction on the use of a prior inconsistent statement provides:

> A witness may be impeached by proving that he or she has made some material statements out of court which are at variance with his or her evidence on the witness stand. However, proof of such prior inconsistent statements may be considered by you only for the purpose of testing the witness' credibility and not as substantive evidence of the truth of the matter asserted in such statements.

T.P.I.–Crim. 42.06 (5th ed. 2000).

Use of the pattern jury instructions is not required. See State v. Phipps, 883 S.W.2d 138, 152 (Tenn. Crim. App. 1994). In our view, the trial court's instruction adequately conveyed that the jury was to consider the prior inconsistent statement only as it affected the credibility of the defendant. The instruction clearly stated that the jury was not to consider the statement as proof of the matter asserted. The instruction further stated that the prior inconsistent statement was to be used to test the credibility of the defendant. The trial court's words, "whether or not you believe or not believe the defendant," were intended as a definition of what is meant by testing the credibility of the defendant, rather than as an instruction that the jury had to consider the prior inconsistent statement as affecting the defendant's credibility, regardless of whether or not it found him believable. In sum, although the instruction could have been more clearly worded, we conclude that it did not mislead the jury regarding the applicable law, and thus, that no prejudicial error occurred from its use.

---

[2]Since the record on appeal does not include the trial court's instructions at the conclusion of the trial, we do not know whether this was the only instruction given as to a prior inconsistent statement.

Additionally, we note that, although the defendant's statement was treated as a prior inconsistent statement, it amounted, as presented, to a confession that he had brought the marijuana into the prison facility on the day he was charged with doing so. However, because the prosecutor had not advised defense counsel of the confession as required by a discovery order, the prosecutor was allowed to utilize it only in rebuttal after the defendant had denied making it. Thus, the statement being a confession, the trial court could have given Tennessee Pattern Jury Instruction–Criminal 42.12, the instruction as to a confession, which states, in part: "Evidence of a confession has been introduced in this case. A confession is a statement by the defendant that *[he]* *[she]* engaged in conduct which constitutes the crime charged and is an acknowledgment of guilt itself." T.P.I.–Crim. 42.12 (5th ed. 2000) (footnote omitted). The instruction which the trial court gave, treating the confession as a prior inconsistent statement, was more favorable to the defendant than the confession instruction would have been. Thus, for this additional reason, we conclude that this assignment is without merit.

### III. Chain of Custody

The defendant next contends that the trial court erred in allowing the marijuana to be admitted into evidence, arguing that the State failed to establish the proper chain of custody necessary for its introduction. The State argues that it established the proper chain of custody for the introduction of the marijuana by introducing testimony of each individual who handled the evidence.

In order for tangible evidence to be introduced at trial, the State must either introduce a witness who is able to identify the evidence, or establish an unbroken chain of custody. State v. Goodman, 643 S.W.2d 375, 381 (Tenn. Crim. App. 1982). The purpose of the chain of custody is to "demonstrate that there has been no tampering, loss, substitution, or mistake with respect to the evidence." State v. Braden, 867 S.W.2d 750, 759 (Tenn. Crim. App. 1993).

> The concept of a "chain" of custody recognizes that real evidence may be handled by more than one person between the time it is obtained and the time it is either introduced into evidence or subjected to scientific analysis. Obviously, any of these persons might have the opportunity to tamper with, confuse, misplace, damage, substitute, lose and replace, or otherwise alter the evidence or to observe another doing so. Each person who has custody or control of the evidence during this time is a "link" in the chain of custody. Generally, testimony from each link is needed to verify the authenticity of the evidence and to show that it is what it purports to be. Each link in the chain testifies about when, where, and how possession or control of the evidence was obtained; its condition upon receipt; where the item was kept; how it was safeguarded, if at all; any changes in its condition during possession; and when, where and how it left the witness's possession.

Neil P. Cohen et al., Tennessee Law of Evidence § 9.01[13][c] (4th ed. 2000) (footnotes omitted). Whether or not the required chain of custody has been sufficiently established lies within the sound discretion of the trial court, and the trial court's determination will not be reversed on appeal absent a clear showing of abuse of discretion. State v. Beech, 744 S.W.2d 585, 587 (Tenn. Crim. App. 1987); State v. Johnson, 673 S.W.2d 877, 881 (Tenn. Crim. App. 1984).

We find no abuse of discretion by the trial court in this matter. At trial, the State introduced testimony from each individual in the chain of custody of the evidence. None of these witnesses testified to having tampered with the evidence, having witnessed anyone else tampering with it, or of having received the evidence in a condition that would indicate tampering. The defendant's supervisor, Andrew Jones, testified that he left the McDonald's bag on the floor of the prison, where the defendant had placed it, until the warden arrived and instructed him to carry it outside to the parking lot. In the parking lot, he turned the bag over to Officer Cox, who gave him a chain of evidence form to sign to indicate Cox's receipt of the evidence from him.

Officer Cox testified that he followed the standard procedure at the Whiteville Police Department to secure the marijuana for evidence by placing the plastic bags in a manila envelope, taping the envelope closed, and signing his initials and the date across the flap. He then took the envelope to the TBI Crime Laboratory in Jackson for further analysis. He identified the standard request for analysis form that he had filled out and signed upon turning the evidence over to the crime lab, as well as the manila envelope containing his initials "SWC" and the date "5-14-99." He reiterated on cross-examination that he had followed all standard procedures in handling and turning over the evidence to the crime laboratory.

Kay Sheriff was able to identify the manila envelope Officer Cox submitted to the crime laboratory by her laboratory number, the subject's name, her initials, and the date that the bag was brought into the laboratory, all of which had been written on the envelope. She was able to further identify the envelope by the crime laboratory tape used to reseal the bag after the completion of drug analysis, across which she had placed her initials and the date that the drugs were returned to the envelope and the envelope resealed. She testified that the envelope was sealed when the laboratory received it from Officer Cox, and that it was resealed when an officer from the Whiteville Police Department retrieved it at the conclusion of the testing process.

Finally, Officer Brandon Moss of the Whiteville Police Department testified that he picked up the envelope from the TBI Crime Laboratory and brought it to the Whiteville Police Department for storage. He identified his signature on the "request for examination" form, and identified the manila envelope as the same package that he had picked up from the crime laboratory, transported to the Whiteville Police Department for evidence storage, and then brought, pursuant to request, into court for trial.

In presenting the testimony of these witnesses, the State offered each link in the chain of the evidence, from Officer Cox's receipt of it in the parking lot of the prison to its presentation in court. The defendant argues, nonetheless, that the evidence should not have been admitted because of

Officer Cox's failure to testify to having placed the defendant's CCA identification card and the field test kit in the evidence envelope. Asserting that it is "beyond question" that someone opened and then resealed the envelope at some point between Officer Cox's initial sealing of the envelope and Kay Sheriff's receipt of it for drug analysis, the defendant contends that the State failed to show circumstances necessary to establish with reasonable assurance that the green leafy plant material discovered in his McDonald's bag was the marijuana that was accepted into evidence at trial.

We disagree. The State need not prove the identity of tangible evidence "beyond all possibility of doubt." State v. Scott, 33 S.W.3d 746, 760 (Tenn. 2000) (citing State v. Holloman, 835 S.W.2d 42, 46 (Tenn. Crim. App. 1992)). Nor is it required to establish facts that eliminate all possibility of tampering. Id. (citing State v. Ferguson, 741 S.W.2d 125, 127 (Tenn. Crim. App. 1987). Rather, "[t]he evidence may be admitted when the circumstances surrounding the evidence *reasonably establish* the identity of the evidence and its integrity." Id. (emphasis added) (citing Holloman, 835 S.W.2d at 46). Here, although Officer Cox did not directly testify to having placed the field drug test kit and the defendant's CCA identification card in the envelope, he did testify to having performed a field test kit on the material before securing the bags for evidence. Kay Sheriff testified that the envelope was sealed when she received it, and did not appear to have been tampered with. We conclude, therefore, that the circumstances establish with reasonable assurance the identity and integrity of the evidence at issue in this case, and that, accordingly, the trial court did not abuse its discretion in admitting the evidence.

This issue is without merit.

### IV. Ineffective Assistance of Counsel

As his final issue, the defendant contends that he received ineffective assistance of trial counsel. He argues that his trial counsel was ineffective for failing to object to the State's use of his prior inconsistent statement, and for failing to adequately investigate and discover evidence in support of his "retaliation" theory of defense. The State argues that the trial court did not err in finding that the defendant received the effective assistance of trial counsel.

The defendant raised the ineffective assistance of trial counsel as an issue in his motion for a new trial, and much of the hearing on that motion was devoted to trial counsel's testimony regarding her representation. Trial counsel testified that the defendant's original position was that he "admitted bringing drugs into the prison," but that he was not guilty because the CCA had failed to provide proper training. Trial counsel said that she told the defendant and his family that the defense would not work, and continued to discuss with them other possible theories of defense. The defendant first told her of the grievance he had filed against Andrew Jones approximately two days before trial, after the trial court's denial of his motion for pretrial diversion. Trial counsel testified that their theory of defense then "evolved" into showing that Jones had planted the marijuana in the McDonald's bag to frame the defendant, in order to get him fired for having made the allegation against Jones. Trial counsel stated that there were some facts to support this theory, including

-12-

statements that the defendant had made to a fellow employee after his arrest to the effect that Jones had "set [him] up," and the obvious "animus" that Jones felt toward the defendant.

Trial counsel admitted that she had not attempted to obtain a copy of the defendant's CCA personnel file to determine whether the grievance he claimed to have filed was included in his records. She explained that her previous experience with the corporation had led her to believe that CCA, with an eye to potential future litigation, would not have recorded the specific details of the defendant's grievance, and thus, that the State would be able to impeach her client's testimony with the lack of detail in his records. Also, she had not wanted to "tip [the State] off" regarding her theory of defense. She disagreed that the report contained in the defendant's personnel file, a copy of which was apparently received as an exhibit at the motion for a new trial hearing, would have corroborated the defendant's testimony, pointing out that the CCA record contained only a statement that the defendant had announced that he was quitting, and that he did not want to talk about his reasons for doing so.

Trial counsel testified that she had telephoned the CCA in an effort to talk to Jeremy Hensley, the supervisor to whom the defendant claimed to have made his complaint. She had learned that Hensley had been transferred to a facility in West Virginia. She had attempted to contact him at that facility, but had not been successful. She admitted that she had not requested a trial continuance in order to make further attempts at contact with Hensley, and that she did not know what Hensley's testimony might have been if he had appeared at trial.

Trial counsel said that she had, in a hearing, objected to the use of the defendant's admission to Officer Cox. The trial court had ruled that the State would not be allowed to use the statement in its case-in-chief, but that it would be allowed to impeach the defendant with a redacted form of the statement should he offer inconsistent testimony at trial. She had not objected to the redacted version of the defendant's statement because she had thought that it was in the defendant's best interest, "essentially a compromise with reality," in that it eliminated his reference to having brought drugs into the facility on previous occasions. Trial counsel thought that the defendant's statement to Officer Cox had clearly implied an admission to having brought the drugs into the prison on May 14. There was "never any confusion," she said, "as to what admission the Defendant made when he was questioned by Officer Cox regarding the incident where he was caught with marijuana at the prison." As far as her initial understanding that the defendant's statement had been that he had done it twice before, rather than that this was only the second time he had done it, she said that she "may have misunderstood what the message was on [her] answering machine." Although counsel, on appeal, refers to Officer Cox's reciting an "invented statement" of the defendant, we conclude that it was, instead, a redacted version of what the defendant had told Cox.

Trial counsel further testified that she had advised the defendant of his right to testify, and that she had informed him that his admission to Officer Cox could be used against him if he offered contrary testimony at trial. She said that the defendant had told her early in her representation that he "brought drugs in to bring in extra money, and he had done it two other times." She also

remembered a conversation in which he indicated that he had admitted to a police officer to having brought the drugs into the prison.

Trial counsel admitted that she had not interviewed or attempted to call Rosa Robinson, the shift supervisor on duty on May 14, 1999, as a witness in the defendant's case. She had contacted each potential witness whose name had been provided by the defendant. The defendant had not mentioned Rosa Robinson's name, or told her that Robinson had been present during the incident at the prison.

The defendant claimed that his trial counsel never spoke to him about her decision to allow the State to "recraft" his statement to Officer Cox to remove any reference to his prior bad acts. He also claimed that he told trial counsel about Rosa Robinson prior to trial, but counsel failed to interview her or call her as a witness. He admitted, however, that he had been given an opportunity at trial to provide the names of any other witnesses that might be needed, and that he had failed to mention Robinson's name. He further admitted that Robinson's testimony would have been essentially the same as that provided by Jones.

On January 9, 2001, the trial court issued an order denying the defendant's motion for a new trial. The trial court found, *inter alia*, that no prejudice had resulted from trial counsel's failure to investigate the defendant's personnel file or to request a continuance to locate Jeremy Hensley, since the personnel file contained no references to the alleged grievance, and the defendant was able to testify at trial about Jones's alleged behavior and animosity towards him. The court further found that trial counsel was not deficient for failing to object to the revision of the defendant's prior inconsistent statement introduced at trial. Consequently, the trial court found the defendant's allegations of ineffective assistance of trial counsel to be without merit, and denied his motion for a new trial.

The findings of fact made by the trial court are conclusive on appeal unless the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). "Moreover, factual questions that involve assessing the credibility of witnesses, or the weight and value to be given their testimony, are matters of resolution by the trial court." Id. We review the trial court's application of law to the facts, however, *de novo*, with no presumption of correctness. Id. We review the issue of ineffective assistance of counsel, which involves mixed questions of fact and law, *de novo*, with a presumption of correctness accorded to the trial court's findings of fact. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns, 6 S.W.3d at 461.

In order to succeed on a claim of ineffective assistance of counsel, the defendant bears the burden of showing both that his counsel's performance was deficient, and that counsel's deficient performance prejudiced the outcome of his case. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see also State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). Since a defendant must meet both prongs of the test in order to succeed on a claim of ineffective assistance of counsel, failure to show either

deficient performance or resulting prejudice will result in a failure to establish his claim. See Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997); Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

Here, the defendant has not shown prejudice resulting from trial counsel's failure to interview potential witnesses or to investigate his personnel file, and has not shown either deficient performance or resulting prejudice in trial counsel's failure to object to the introduction of his prior inconsistent statement. Despite his allegations that Jeremy Hensley and Rosa Robinson would have offered testimony favorable to his case had trial counsel interviewed them or called them to testify at trial, the defendant did not present the testimony of either of these witnesses. Without any proof as to the testimony that these witnesses would have offered at the trial, at the hearing regarding the alleged ineffective assistance of trial counsel, the defendant cannot demonstrate that he was prejudiced by their failure to be called on his behalf. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We agree with the trial court that the defendant was not prejudiced by trial counsel's failure to investigate his CCA personnel file, since the file did not contain the grievance he allegedly filed against Jones, and thus would not have provided any corroboration for his defense theory. We also agree with the trial court that trial counsel was not deficient for failing to object to the redacted version of the defendant's statement that was used to impeach his testimony at trial. The record shows that trial counsel raised an objection to the statement in a hearing, resulting in a ruling by the trial court that the statement would be admissible only for impeachment purposes. The requirements for admission of the statement were met by the State's questioning of the defendant on cross-examination, and his denial of having made the statement. Thus, there was no basis upon which trial counsel could renew her objection to the statement.

As for the alleged illogic of the defendant's testifying, and opening the door to testimony as to his admission to Officer Cox, there is a reverse side to the defendant's argument. Only through his testimony could the defendant attempt to deflect and explain the prosecution testimony that he was caught trying to smuggle marijuana into the prison, that he fled the scene, tried to evade capture by the police, and why Andrew Jones would have a reason to give false testimony. Given the prosecution's proof and the defense theory, we cannot conclude that no competent counsel would have determined that the defendant should testify. See Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). We conclude, therefore, that the trial court did not err in finding that the defendant failed to meet his burden of demonstrating ineffective assistance of trial counsel.

This issue is without merit.

## CONCLUSION

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE