IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs November 28, 2001

## STATE OF TENNESSEE v. FARON DOUGLAS PIERCE

**Direct Appeal from the Criminal Court for Knox County**
**No. 67174B      Ray L. Jenkins, Judge**

_____

**No. E2001-00437-CCA-R3-CD   Filed April 9, 2002**

_____

Defendant appeals his conviction for robbery. Defendant contends that (1) the evidence was insufficient to support the conviction and (2) that the trial court erred in admitting testimony regarding prior inconsistent statements. We affirm the trial court judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Faron Douglas Pierce.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and Robert L. Jolley, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On January 25, 1999, a Knox County grand jury indicted defendant Faron Douglas Pierce for aggravated robbery, a Class B felony, in violation of Tennessee Code Annotated section 39-13-402. On November 15, 2000, defendant was convicted of robbery, a Class C felony. On January 4, 2001, the trial court conducted a sentencing hearing and determined that defendant was a Range III persistent offender. The trial court sentenced defendant to serve fifteen years in the Tennessee Department of Correction.

Defendant filed a timely motion for new trial on January 16, 2001, and the trial court held a hearing on January 26, 2001. Defendant's motion was denied by the trial court. Defendant filed a timely notice of appeal on February 26, 2001.

**Facts**

The victim, John Schober, testified that on October 22, 1998, he was working as the cashier at the Northshore Texaco in Knoxville. The victim testified that at about 7:30 p.m., defendant entered the store with another individual, co-defendant David C. McFalls. The two individuals walked to the back of the store and looked at products on the medicine aisle. One of the men held a package and addressed the clerk asking, "[d]oes this contain aspirin?" The victim put on his glasses, walked to the back of the store, and read the packet. He answered, "Yes" and returned to his position behind the counter at the front of the store. The two individuals returned to the front of the store, and the victim began to ring up their purchases. As the co-defendant stood in front of the counter, defendant came behind the counter and "sucker-punched" the victim, knocking him to the floor. Defendant tried to open the cash register but was unsuccessful because the victim locked the register just prior to the men entering the store. The victim testified that defendant stated, "[o]pen the M – F– drawer or I'll kill you," and the victim opened the drawer. The victim testified that defendant emptied the cash drawer and told the victim to "stay on the floor or else [defendant would kill the victim]." The two men fled the store.

Police recovered evidence from the scene, including a Tylenol container with defendant's fingerprints and a video from the store security camera operating at the time of the robbery. At a later date, the victim identified defendant in a photgraph lineup. The victim also identified defendant at trial and further testified after viewing the videotape at trial that the videotape was an accurate depiction of what happened the night of the robbery.

The victim testified that it was the co-defendant who actually brought the Tylenol container to the counter. The victim also stated that it was common for many items in the store to be touched or picked up by different customers. On cross-examination, the victim testified that the most distinguishing characteristic he could recall about the individual who struck him was that the individual seemed to have no teeth. He testified that he gave a description of the individual to the police. He stated that he did not tell the police anything regarding the individual's facial hair. However, the photo he picked out was of an individual with facial hair. He finally stated that police did not ask any questions about other physical characteristics. On redirect, he testified that he picked out the photo right away, with no help, and that he did not know that the person he picked out in the photo would have fingerprints at the scene on the counter.

Eric Howard Tuck testified that he was at the Northshore Texaco on the night of the robbery. He testified that, as he entered the Texaco, he saw two men run past him, although he could not positively identify them.

Tim Schade testified that he is a senior evidence technician at the Knoxville Police Crime Lab. He testified that he examined the fingerprints lifted from the scene and that the fingerprints taken from the Tylenol container matched with defendant. It was a fourteen-point match, and the prints were "unquestionably" defendant's.

Ken Slagle testified that he is an investigator with the Knoxville City Police Department, where he has worked for thirty years. He testified that after the lab ascertained whose fingerprints were on the Tylenol container, he obtained a photo of defendant. He later interviewed the victim. He stated that the victim immediately identified defendant's photo. On cross-examination, Detective Slagle testified that he interviewed the victim at the crime scene, and the victim gave a description of the suspect who had struck him as being a white male, twenty to thirty years old, approximately five feet and six or seven inches tall, 140 to 150 pounds, with a mustache and beard, wearing a blue shirt and a bandana, and having no teeth.

Gary Price stated that he is a sergeant with the Knoxville City Police Organized Crime Unit. He stated that he arrested defendant. He stated that defendant had a missing tooth. Further, he stated that defendant denied the robbery.

Defense witness Kimberly Swiney testified that she was a friend of defendant. She testified that defendant stayed at her home during October because defendant's mother requested that Ms. Swiney care for defendant after he was seriously injured. She testified that defendant had a slight concussion, broken ribs, swollen eyes, and would have shortness of breath when walking. She stated that his physical injuries affected his ability to walk and move around, and that she never saw defendant run. She stated that defendant's health improved after Halloween of 1998.

Defense witness David McFalls, who was originally charged as a co-defendant, testified that he pled guilty to robbery regarding his involvement with this case. He testified that he was one of two men involved in the incident but that defendant was not there and was not the other individual. On cross-examination, McFalls was asked if, after previously viewing the video of the robbery, he identified defendant to an assistant district attorney as being the other person on the security camera video. McFalls testified that the other person on the video "favored [defendant]." Over defendant's objection, the State was allowed to call the assistant district attorney who testified that McFalls, in fact, previously identified defendant as the other person on the security camera video.

At the conclusion of the evidence, the jury returned a verdict of guilty for the crime of robbery.

I.     *Sufficiency of Evidence*

We review challenges to sufficiency of the evidence according to well-settled principles. When a defendant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985). The State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. Tuggle, 639 S.W.2d at 914. On appeal, "the state is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. This Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). In concluding our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996). We also will not reweigh a jury's rejection of a particular defense asserted by a defendant to excuse his conduct. See, e.g., Cabbage, 571 S.W.2d at 835.

Defendant asserts that the main issue at trial was one of identification and that the evidence adduced was insufficient to convict him of robbery. We disagree and affirm the verdict.

First, the record from trial reflects that the victim identified defendant in a photo lineup. This testimony was corroborated by Investigator Slagle, who testified that he administered the photo lineup. Through such lineup, the victim identified defendant as the perpetrator. Further, at trial, the victim identified defendant as the one who robbed the victim at the Northshore Texaco.

Second, defendant's fingerprint was found on a Tylenol container gathered from the scene of the robbery. The victim testified that the perpetrators of the robbery brought the Tylenol container from the rear of the store to the front and set it on the counter. The testimony of technician Schade was that the fourteen-point match fingerprint was "unquestionably" defendant's.

Third, the co-defendant stated in a police interview that a person seen on a video from the store's security camera robbing the store favored defendant.

Finally, the jury in this case viewed the videotape taken from the store security camera. Thus, the jury was able to watch the victim identify defendant on the videotape, and the jury was able to see that the person on the videotape committing the robbery was indeed defendant.

We conclude that the evidence adduced at trial, which consisted of fingerprint evidence, eyewitness identification, a videotape of the robbery, and the co-defendant's statement, is sufficient to support the jury's verdict. We affirm.

*II.     Prior Inconsistent Statements*

Defendant asserts that the trial court, over defendant's objection, improperly admitted evidence of the co-defendant's prior statement to police regarding the identification of the perpetrator of the robbery.

Rule 613(b) of the Tennessee Rules of Evidence governs the admissibility of witness prior inconsistent statements.  It states:

> Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require.

The rule requires that the prior statement be inconsistent with the witness' trial testimony. State v. Brady, 2001 Tenn. Crim. App. LEXIS 28, at *9, No. M1999-02253-CCA-R3-CD, 2001 WL 30220, at *9 (Tenn. Crim. App., filed January 12, 2001, at Nashville), perm. to appeal denied, (Tenn. 2001); see also Doochin v. U.S. Fidelity & Guar. Co., 854 S.W.2d 109, 114 (Tenn. Ct.  App. 1993).

In his testimony, co-defendant McFalls testified that a man by the name of Kenneth Whaley was present at the robbery and not defendant.  On cross-examination, the co-defendant denied that he previously made a pre-trial statement to the assistant district attorney that defendant participated in the robbery.   The co-defendant also stated that he viewed the store security camera video with the assistant district attorney, but he denied telling the assistant district attorney that the video captured defendant committing the robbery.  He testified that he previously stated the individual on the video "favored" defendant.

After this testimony, the prosecutor again questioned the co-defendant at length concerning the identification of defendant as the one who was present at the robbery.  Attempting to clarify any discrepancy between his trial testimony and his previous statements, the co-defendant stated that when he previously made the alleged identification of defendant, the co-defendant was on nerve pills. Defense counsel again questioned the co-defendant briefly before the State offered rebuttal testimony regarding the prior statements.  Over the defense's objections, the trial court allowed the assistant district attorney to testify.  She stated that the co-defendant made a pre-trial statement that defendant was an accomplice in the robbery.  The assistant district attorney also testified that the co-defendant, after viewing the video from the security camera, made a pre-trial identification of defendant as the accomplice.

We conclude that the testimony offered by the assistant district attorney for the purposes of impeaching the co-defendant was proper.  A "prior inconsistent statement may be admissible to test the credibility of a witness." State v. Woods, No. W2001-00316-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 797, at *15 (Tenn. Crim. App., filed Oct., 5, 2001, at Jackson) (citing State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000)).

In this case, the prosecutor properly laid a foundation by allowing the co-defendant ample opportunity to explain the differences between his in-court testimony of denying defendant's participation and the pre-trial statements wherein he allegedly identified defendant. Upon examination, the co-defendant denied stating that defendant participated in the robbery. The requirement for admission of the statement was met at that point, and the assistant district attorney's testimony regarding the co-defendant's prior statements was proper. The issue is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE