IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 17, 2021 Session

## CAROL BUCKLEY v. THE ELEPHANT SANCTUARY IN TENNESSEE, INC.

**Appeal from the Chancery Court for Lewis County**
**No. 2010-CV-133   Deanna B. Johnson, Judge**

———————————————————

### No. M2020-00804-COA-R10-CV

———————————————————

In this Rule 10 extraordinary appeal, the plaintiff seeks review of the trial court's decision to grant a new trial on the basis of an improper comment made during closing arguments, despite the fact that a curative instruction was given. Having reviewed all of the grounds asserted in support of the motion for new trial, we conclude that the trial court abused its discretion in granting the motion.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Edward M. Yarbrough and W. Justin Adams, Nashville, Tennessee, for the appellant, Carol Buckley.

Robert E. Boston and Mark M. Bell, Nashville, Tennessee, for the appellee, The Elephant Sanctuary in Tennessee, Inc.

## OPINION
### I. FACTUAL AND PROCEDURAL HISTORY

This extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure ("Rule 10") requires us to determine whether the trial court abused its discretion in granting a motion for a new trial. Plaintiff/Appellant Carol Buckley initiated the underlying lawsuit on October 1, 2010, against Defendant/Appellee The Elephant Sanctuary in Tennessee ("the Sanctuary" or "the Elephant Sanctuary") of Hohenwald,

Tennessee.[1] The complaint alleged that Ms. Buckley founded the Sanctuary on her own land in 1994, but had been unlawfully removed as President and Board Member of the Sanctuary in early 2010. As such, Ms. Buckley raised claims of common law and statutory retaliatory discharge, violations of the Tennessee Personal Rights Protection Act, violations of the common law right to privacy, defamation, breach of contract, and conversion. As relief, Ms. Buckley asked that, *inter alia*, she be reinstated as President and Board Member, that certain people be removed from positions of authority at the Sanctuary, that she be awarded compensatory and punitive damages, that she be awarded a permanent injunction prohibiting the Sanctuary from using her likeness, and that she be granted visitation rights to her elephant, Tarra, during normal business hours.

The Sanctuary filed an answer denying Ms. Buckley's allegations, as well as a counterclaim asserting that it owned Tarra, an elephant that resided at the Sanctuary. As such, the Sanctuary asked, *inter alia*, for a declaratory judgment that Tarra was "a part of the Sanctuary and its family of elephants." In the alternative, the Sanctuary asked that Ms. Buckley be required to repay the benefits conferred for the care of Tarra since 1995.

In August 2012, the trial court entered an order of voluntary dismissal of Ms. Buckley's claims against the individuals, as well as her claim for breach of contract. A later order was entered stating that Ms. Buckley's remaining claims against the Sanctuary were still pending. But on March 10, 2014, Ms. Buckley filed a motion seeking to amend her complaint. Therein, Ms. Buckley asserted that her amended complaint would abandon her previous claims against the Sanctuary in favor of a single claim seeking a declaratory judgment in her favor concerning the ownership of Tarra. The trial court eventually granted Ms. Buckley's motion. As such, the only claims that remained pending were the parties' cross-claims to ownership of Tarra.

The case eventually proceeded to a jury trial in 2018 to determine the ownership of Tarra; the first trial resulted in a hung jury. The case was retried in April 2019.

At the 2019 trial, the parties stipulated that Ms. Buckley purchased Tarra in 1976. The proof showed that decades later, in the fall of 1994, Ms. Buckley purchased land in Tennessee to move Tarra to and to establish a home for other old and retired elephants to remove them from circuses and zoos that were not suitable. Thus, the Sanctuary was born, and around December 1994, the Sanctuary was established as a non-profit organization.[2] Tarra was transferred from the Nashville Zoo, where she had been on loan, to the Sanctuary on March 3, 1995, under an exhibitor's permit issued to the Sanctuary by the Tennessee

---

[1] The complaint also named other individuals as defendants; they are not at issue in this appeal.

[2] Scott Blais was also integral to the founding of the Sanctuary. Mr. Blais and Ms. Buckley were romantic partners at that time. He served as co-director of the non-profit for a number of years before leaving voluntarily. Mr. Blais testified on behalf of the Sanctuary at the 2019 trial.

Wildlife Resources Agency.[3]  At that time, Tarra was only twenty years old.[4] At no time since 1994 has Tarra been removed from the Sanctuary. Over the years, the Sanctuary grew to hold as many as twenty-three elephants.[5]

Ms. Buckley lived at the Sanctuary and worked as a co-director or board member for the non-profit for the next fifteen years.   In 2010, however, the Sanctuary's board of directors informed Ms. Buckley that she would be removed from the day-to-day care of the elephants and placed in a different position. Ms. Buckley resigned and was thereafter allegedly prevented from seeing Tarra for several years until this litigation commenced.

A significant issue at trial was "The Elephant Sanctuary Acquisition and Disposition Policy" (the "Disposition Policy"). This policy provides that "a permanent resident" can only be transferred to another facility if the transfer is in the elephant's best interest. Under this policy, "[a]ll dispositions must have written approval from the attending veterinarian, Co-Directors and the Board of Directors prior to the disposal of the elephant."[6] This policy was not in place until after Tarra was transferred to the Sanctuary. As such, much of the testimony concerned whether the Disposition Policy applied to Tarra.

During closing arguments in the second trial, counsel for Ms. Buckley made a comment that the Sanctuary did not pay property taxes because it is a 501(c)(3) tax exempt organization.[7] During a jury-out break following the closing argument, the Elephant Sanctuary objected to the comment and requested a curative instruction on the basis that the comment was prejudicial and not based on evidence in the record. The trial court gave the curative instruction prior to the Sanctuary's closing argument. Although the trial court indicated that it would grant a mistrial on the basis of the comment if requested, the Sanctuary elected to proceed with its rebuttal.

The jury form asked the jury three questions—one related to whether Ms. Buckley gifted Tarra to the Sanctuary and two related to the Disposition Policy and whether Ms. Buckley had agreed to transfer Tarra to the Sanctuary under that policy. The jury found in favor of Ms. Buckley,[8] and the trial court entered judgment declaring that Ms. Buckley owned and had the right to possess Tarra.

---

[3] The permit could not be issued to Ms. Buckley, as personal permits were outlawed in Tennessee in 1991. Ms. Buckley therefore applied for the permit as the Sanctuary's director.

[4] By comparison, another elephant currently at the Sanctuary was seventy-one at the time of trial.

[5] By the time of the second trial, their numbers had diminished.

[6] The proof indicated that the attending veterinarian did not approve of the removal of Tarra from the Sanctuary.

[7] The fact that the Sanctuary was tax-exempt was mentioned by the Sanctuary's counsel in both his opening and closing arguments.

[8] The jury found that there was no gift as it pertained to Tarra. While the jury found that the Sanctuary did have a policy that permanent residents of the Sanctuary were not removable by their owners, it further found that Ms. Buckley did not agree to apply this policy to Tarra.

The Sanctuary subsequently filed a motion for a new trial for three reasons: the verdict was against the weight of the evidence, Ms. Buckley's counsel made a "highly prejudicial comment," and a new trial was in the interests of justice. The trial court granted the motion without explanation. Ms. Buckley promptly filed a motion to alter or amend the judgment, in part asking the trial court to provide the basis for its decision. The trial court denied Ms. Buckley's motion by order of March 25, 2020; again, the trial court provided no reasoning to support its decision to grant a new trial or to deny the motion to alter or amend.

On April 24, 2020, Ms. Buckley filed a motion for recusal and trial before a different judge, pursuant to Rule 59.06 of the Rules of Civil Procedure[9] and Rule 10B of the Rules of the Tennessee Supreme Court[10] on the ground that the trial judge, by granting the motion for new trial without explanation, was presumed to have weighed the evidence and found the jury's verdict to be against the weight of the evidence. Only when faced with that motion did the trial court explain its reason for granting the new trial. Specifically, the trial court denied the motion to recuse on the basis that it did not grant the motion for a new trial due to the weight of the evidence, but instead based on the fact that the comment made by Ms. Buckley's attorney during closing argument was prejudicial:

> The Court believed that [counsel's] statements in closing argument were so very egregious that a new trial was warranted on that ground. However, out of respect for [counsel], the Court chose not to identify his statements as the actual reason for granting the motion, especially in light of the media coverage of this case. Therefore, the Court simply granted the motion for new trial without identifying the reason.
>
> * * *
>
> Ms. Buckley has now filed a Rule 10B motion. In order to properly rule on that 10B motion, the Court must now put into the record the Court's finding regarding [counsel's] statement, i.e., [counsel's] statement was so highly inflammatory, prejudicial, and offensive to The Sanctuary as to warrant a new trial. For this reason, the court granted The Sanctuary's motion for new trial.

Ms. Buckley then filed an application for an extraordinary appeal of the trial court's decision to grant the new trial pursuant to Rule 10 of the Tennessee Rules of Appellate

---

[9] Rule 59.06 of the Tennessee Rules of Civil Procedure provides, "If the trial court grants a new trial because the verdict is contrary to the weight of the evidence, upon the request of either party the new trial shall be conducted by a different circuit judge or chancellor."

[10] Rule 10B of the Rules of the Tennessee Supreme Court provides the procedural mechanism by which to request recusal of a trial judge.

Procedure.[11] Therein, Ms. Buckley argued that immediate appellate review of that decision was warranted because it was a clear abuse of discretion that far departed from the accepted and usual course of judicial proceedings. Specifically, Ms. Buckley argued that the Sanctuary, by requesting a curative instruction instead of a mistrial, had waived its right to challenge, in a motion for a new trial, the comment made in closing argument. Ms. Buckley also argued that when the trial court ignored the presumption that the jury followed its curative instruction and instead granted a new trial solely based on the comment, the court abused its discretion, a decision that she argued continued to inflict irreparable harm. As such, Ms. Buckley asked that the trial court's decision to grant a new trial be reversed and the jury's verdict reinstated. In the alternative, Ms. Buckley asked that the trial court's denial of her motion to recuse be reversed and the matter assigned to a new judge for retrial.

On June 26, 2020, this Court entered two orders: (1) ordering that the Rule 10B recusal appeal was to be separated from the Rule 10 extraordinary appeal; and (2) granting Ms. Buckley's Rule 10 extraordinary appeal concerning the grant of the new trial.

Due to the accelerated nature of appeals under Rule 10B, Ms. Buckley's recusal appeal was heard first by this Court. *See **Buckley v. Elephant Sanctuary in Tennessee, Inc.***, No. M2020-00883-COA-T10B-CV, 2020 WL 3980437, at *3 (Tenn. Ct. App. July 14, 2020) (hereinafter, "***Buckley I***") ("Having considered the answer along with the petition and supporting documents, we have determined that neither additional briefing, nor oral argument is necessary, and we elect to act summarily on the appeal in accordance with Tenn. Sup. Ct. R. 10B, §§ 2.05 and 2.06."). In July 2020, we reversed the trial court's decision to deny the motion for recusal and remanded the case with instructions for another judge to be designated to preside over the case. ***Id.*** at *6.

Briefing was completed in the instant appeal in November 2020, and this Court held remote oral arguments on February 17, 2021.

## II. ISSUES PRESENTED

In our order granting this Rule 10 appeal, we did not specify the issues to be decided.

---

[11] This Court has explained in ***Blackburn v. CSX Transp., Inc.***, "an order granting a new trial is not a final order" and thus "is not 'appealable,' since it is not a final judgment and is interlocutory." No. M2006-01352-COA-R10-CV, 2008 WL 2278497, at *4 (Tenn. Ct. App. May 30, 2008) (citing 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil* 2d § 2818). We continued:

> While an order granting a new trial is not ordinarily "appealable," it is reviewable. The decision to *grant* a new trial may be appealed in at least two ways. First, as in this case, by interlocutory appeal [via Rule 10]. Second, on appeal from a judgment in the second trial, the appellant may claim error in the grant of the new trial.

***Id.***

Ms. Buckley raises two issues for our review.[12] In our view, this appeal involves a single issue: whether the trial court erred in granting a new trial under the circumstances presented in this case.

The Elephant Sanctuary also raises a number of issues, most of which assert that the trial court correctly granted its motion for a new trial. Alternatively, the Elephant Sanctuary asks that this appeal be dismissed as moot, due to the law of the case and Ms. Buckley's inconsistent positions.[13]

## III. STANDARD OF REVIEW

"A trial court's decision regarding whether to grant or deny a motion for a new trial is discretionary in nature, and we accord such rulings great deference. We will only disturb

---

[12] Specifically, Ms. Buckley frames her issues as follows:

1. Whether the Sanctuary waived opposing counsel's comment in closing argument where the Sanctuary failed to contemporaneously object to the comment and move for mistrial and instead requested and received a corrective instruction, which the jury is presumed to have followed?
2. Whether the Trial Judge erred by granting a new trial based solely on opposing counsel's comment in closing argument about the Sanctuary's non-payment of property taxes where:

   (a) The Sanctuary had previously informed the jury it was tax-exempt;
   (b) The comment was a single sentence made in passing in a lengthy argument on numerous subjects;
   (c) Any prejudice was slight given the weight of the evidence against the Sanctuary's position; and
   (d) The Sanctuary failed to contemporaneously object to the comment and move for mistrial and instead requested and received a corrective instruction, which the jury is presumed to have followed?

[13] Specifically, the Sanctuary raises the following issues:

1. Whether this appeal should be dismissed as moot because (1) the law of the case doctrine precludes the Court from re-considering which ground the trial court relied on in granting The Sanctuary's motion for a new trial, (2) the stated basis for Carol Buckley's extraordinary appeal no longer exists, and (3) Ms. Buckley should not be allowed to take an inconsistent position now from the one she took in the Rule 10B appeal from which she was already granted relief?
2. Whether the trial court properly exercised its discretion in considering The Sanctuary's objection to Ms. Buckley's counsel's improper comment in closing argument about The Sanctuary's nonpayment of property taxes during recess rather than during closing argument?
3. Whether the trial court was within its discretion in granting relief to The Sanctuary?
4. Whether Ms. Buckley is entitled to relief?

such a decision if it amounts to an abuse of discretion." ***Ali v. Fisher***, 145 S.W.3d 557, 564 (Tenn. 2004) (citing ***Henry v. Goins***, 104 S.W.3d 475, 479 (Tenn. 2003)). An abuse of discretion occurs when a court "'causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.'" ***Funk v. Scripps Media, Inc.***, 570 S.W.3d 205, 210 (Tenn. 2019) (quoting ***Lee Med., Inc. v. Beecher***, 312 S.W.3d 515, 524 (Tenn. 2010)).

## IV. ANALYSIS

In this case, Ms. Buckley appeals from the trial court's decision to grant the Sanctuary's motion for new trial. Rule 59.07 provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury for any of the reasons for which new trials have heretofore been granted." The rule does not set forth the grounds that may be cited in support of a motion for a new trial; instead, the grounds "have been governed by case law." Tenn. R. Civ. P. 59.07 adv. commission cmt. (noting that a "helpful list" is provided by "Professor Larry A. Pivnick's treatise, *Tennessee Circuit Court Practice* § 28:1[,]" which lists fourteen different grounds, including errors in the admission or exclusion of evidence, misconduct of counsel, newly discovered evidence, and that the verdict is contrary to the evidence).

"In Tennessee, the law is clear that if a motion for a new trial is filed, then the trial court is under a duty to independently weigh the evidence and determine whether the evidence 'preponderates' in favor of or against the verdict." ***Blackburn***, 2008 WL 2278497, at *6 (footnote omitted) (citing ***Woods v. Walldorf & Co., Inc.***, 26 S.W.3d 868, 873 (Tenn. Ct. App. 1999); ***Shivers v. Ramsey***, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996); ***Witter v. Nesbit***, 878 S.W.2d 116, 121 (Tenn. Ct. App. 1993)). This role is referred to as the "thirteenth juror."[14] ***Id.*** (citing ***Holden v. Rannick***, 682 S.W.2d 903, 904–05

---

[14] The Tennessee Supreme Court has reaffirmed the "well-established" duty of a trial judge to act as "thirteenth juror":

> The reasons given for the rule are, in substance, that the circuit judge hears the testimony, just as the jury does, sees the witnesses, and observes their demeanor upon the witness stand; that, by his training and experience in the weighing of testimony, and the application of legal rules thereto, he is especially qualified for the correction of any errors into which the jury by inexperience may have fallen, whereby they have failed, in their verdict, to reach the justice and right of the case, under the testimony and the charge of the court; that, in our system, this is one of the functions the circuit judge possesses and should exercise-as it were, that of a thirteenth juror. So it is said that he must be satisfied, as well as the jury; that it is his duty to weigh the evidence; and, if he is dissatisfied with the verdict of the jury, he should set it aside.

***Davidson v. Lindsey***, 104 S.W.3d 483, 488 (Tenn. 2003) (quoting ***Cumberland Tel. & Tel. Co. v. Smithwick***, 79 S.W. 803, 804 (Tenn. 1904)).

(Tenn. 1984)). When exercising this role,

> The discretion permitted a trial judge in granting or denying a new trial is so wide that our courts have held that he or she does not have to give a reason for his ruling. If the trial judge does give reasons, the appellate court will only look to them for the purpose of determining whether the trial court passed upon the issue and was satisfied or dissatisfied with the verdict. If the trial judge does not give a reason for her action, the appellate courts will presume she did weigh the evidence and exercised her function as thirteenth juror.

*Id.* at *7 (internal citations omitted) (citing *Wakefield v. Baxter*, 41 Tenn. App. 592, 597, 297 S.W.2d 97, 99 (Tenn. Ct. App. 1956) ("If he does give reasons for his action, this court looks to them only for the purpose of determining whether he passed upon the issues, and was satisfied or dissatisfied with the verdict thereon.")); *see also Mize v. Skeen*, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971) (discussed in detail, *infra*). Keeping these principles in mind, we turn to address the arguments raised by the parties to this appeal.

## A. Preliminary Issues

As an initial matter, the Sanctuary argues that this appeal was rendered moot due to the decision in *Buckley I*. A case is "moot if it no longer serves as a means to provide some sort of relief to the party who may prevail or if it no longer presents a present, live controversy." *Lance v. York*, 359 S.W.3d 197, 204 (Tenn. Ct. App. 2011) (citing *State v. Ely*, 48 S.W.3d 710, 717 n.3 (Tenn. 2001); *Cty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996)).

The Sanctuary first argues that the law of the case doctrine prevents this Court from looking into the reasons the trial court granted the motion for a new trial. The Sanctuary contends that our opinion in *Buckley I* contained this Court's implicit acceptance of Ms. Buckley's argument that the trial court's silence demonstrated that it granted the new trial on the basis that the weight of the evidence was against the verdict. *See Blackburn*, 2008 WL 2278497, at *7 ("If the trial judge does not give a reason for her action, the appellate courts will presume she did weigh the evidence and exercised her function as thirteenth juror."). According to the Sanctuary, Ms. Buckley cannot now argue that the basis for the trial court's ruling was not relative to the weight of the evidence.

The law of the case doctrine is one that "generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." *Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (citing 5 Am.Jur.2d *Appellate Review* § 605 (1995)). "In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same

as the facts in the first trial or appeal." *Id.* (citing *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998–99 (1939)).

We respectfully disagree with the Sanctuary's argument for a variety of reasons. First, in the Rule 10B appeal, the only issue before this Court was whether the trial court should have granted the motion to recuse. *See Duke v. Duke*, 398 S.W.3d 665, 668 (Tenn. Ct. App. 2012) (stating that pursuant to Tennessee Supreme Court Rule 10B, "the only order we may review is the trial court's order that denies a motion to recuse" and that "we may not review the correctness or merits of the trial court's other rulings"). We expressly stated that this Court was not considering whether the trial court erred in stating its reasons for granting the motion for a new trial several months later and in response to a motion for recusal. *Buckley I*, 2020 WL 3980437, at *3. The propriety of the trial court's decision to grant the motion for a new trial was simply not decided in the prior appeal. The purpose of this appeal is to resolve that question, which remains in controversy notwithstanding the fact that any future proceedings will be before a different trial judge.

Moreover, we do not view *Buckley I* in the same manner as the Sanctuary. Here, the Sanctuary contends that the holding of *Buckley I* was that the trial court granted the motion for a new trial because it disagreed with the weight of the evidence. Under this reasoning, the recusal was therefore mandated under Rule 59.06 of the Tennessee Rules of Civil Procedure. Respectfully, that is not the holding of *Buckley I*. Instead, we held that the trial court's initial silence as to which of the three grounds raised in the motion for a new trial had been sustained "created a presumption that it granted a new trial because the weight of the evidence was against the verdict." *Buckley I*, 2020 WL 3980437, at *6. Because recusal under Rule 59.06 is mandatory, if we concluded that the presumption had not been rebutted, we could have simply ended our opinion there and reversed the trial court's denial of the motion to recuse. *Id.* at *5 (noting that Rule 59.06 provides for "mandatory disqualification"). We did not. Instead, we went on to consider the trial court's comments in denying the motion to recuse, which gave a different reason for granting the motion for a new trial.

In our view, the holding of *Buckley I* was not that Rule 59.06 necessarily mandated recusal, but that "the unique facts and circumstances of this case [gave] the impression that the court's decision to belatedly provide a reason for granting a new trial was to avoid disqualification." *Id.* at *6. This circumstance created "a reasonable basis for questioning the judge's impartiality based on the facts of this case." *Id.* As such, we think it inappropriate to read *Buckley I* as determining for purposes of this appeal that the trial court based the grant of the motion for new trial on an assessment of the weight of the evidence. The law of the case therefore does not bar the question raised in this appeal.

Finally, we note that in determining the propriety of a trial court's decision to grant a new trial, the trial court's stated reasons for doing so are typically not dispositive of the appeal. Instead, we have previously explained that

- 9 -

> In reviewing the action of the trial court in granting a new trial it is the duty of this court to consider all grounds set forth in the motion for new trial; and, if any one of the grounds will justify the action of the court in granting a new trial, this court will affirm, although the trial judge based his decision on some other ground.

*Wileman v. Mayor & Aldermen of Town of Tullahoma*, 29 Tenn. App. 172, 178, 195 S.W.2d 325, 327 (Tenn. Ct. App. 1946) (citing *Citizens' Rapid Transit Co. v. Dozier*, 110 Tenn. 98, 72 S.W. 963, 964 (Tenn. 1903) ("We have accordingly examined all of the grounds assigned in the court below, and are of opinion that the circuit judge rightly granted the new trial, not for error in his charge as actually given to the jury, but in his failure to give in charge one of the requests of the defendant in error.")). As more recently explained by this Court:

> The one appealing from the trial judge's order granting a new trial is burdened with showing the action of the trial judge was not in the exercise of his function as 13th juror, but was for some invalid reason. Before the appellate court will interfere with the trial judge's granting of a new trial, it must be clearly shown the action was for some untenable or unreasonable reason. . . .
>
> On appeal the appellate courts must consider all the grounds assigned below and if any one is found to justify the action of the trial judge in granting a new trial, such action will be affirmed even though an erroneous reason was given by the trial judge.
>
> It has been said that the appellate courts are more liberal in upholding the Trial Court's action in granting a new trial than they are in upholding the Trial Court's action in denying a new trial.

*Mize v. Skeen*, 468 S.W.2d 733, 736 (Tenn. Ct. App. 1971) (internal citations omitted). Thus, while Ms. Buckley contends in this appeal that the trial court granted the motion for a new trial solely on the basis of the improper comment concerning the Sanctuary's tax-exempt status during closing argument, we must consider each of the grounds alleged in the Sanctuary's motion in order to adjudicate this appeal.

We likewise reject the Sanctuary's argument that Ms. Buckley should be estopped from arguing against the grant of a new trial in this case because she has taken inconsistent positions with regard to the reasoning employed by the trial court in granting the motion for new trial. Here, the trial court's decision to repeatedly obscure its basis for granting the motion for a new trial left Ms. Buckley with no other option than to assume that the trial court's decision was based on an assessment of the evidence and to seek mandatory recusal under Rule 59.06. Only at this point did the trial court provide another basis for the grant of the new trial, which this Court has previously characterized as creating an impression

that the trial court was attempting to avoid disqualification. *See* **Buckley I**, 2020 WL 3980437, at *6.

Ms. Buckley was then left with conflicting implications: (1) that the presumption indeed applied and the trial court granted the motion because the verdict was against the weight of the evidence; or (2) that the motion was granted because of the trial court's belated express statement concerning the improper closing argument. This placed Ms. Buckley in an untenable situation of trying to obtain relief without a clear ruling against which to marshal an argument. As such, she appropriately raised claims for relief in the alternative in her Rule 10 application. *Cf.* Tenn. R. Civ. P. 8.05(2) (allowing parties to raise all claims "regardless of consistency"). Indeed, the recusal argument was raised as an alternative to Ms. Buckley's primary request for relief, reversal of the grant of a new trial. Only due to the accelerated nature of appeals under Rule 10B, this argument was heard first. *Cf.* **Buckley I**, 2020 WL 3980437, at *1 (describing the case as "an accelerated interlocutory appeal"). And, in any event, this Court must consider all grounds raised by the Sanctuary regardless of Ms. Buckley's belief that one is the true basis for the trial court's decision. *See* **Mize**, 468 S.W.2d at 736. Under the unique circumstances of this case, we conclude that Ms. Buckley should not be prevented from arguing that the motion for a new trial was improperly granted. We therefore proceed to consider that issue.

### B.      The Motion for New Trial

Here, the Sanctuary raised three grounds in its motion for new trial: "(a) the operative part of the verdict that compels this outcome is contrary to the weight, [and] indeed devoid, of the evidence; (b) the highly prejudicial comment made during closing argument for . . . [Ms.] Buckley"; and "(c) a new trial is necessary for the interests of justice to be served." We begin with the ground for a new trial involving the alleged improper reference to the Sanctuary's purported exemption from property taxes.

### 1.  Prejudicial Comment During Closing Argument

The offending portion of the closing argument was as follows:

They have harped on this word "permanent," . . . Sure, we say "permanent." We say "perpetual." Every charter has that word in it, "perpetual." What does that really mean? For as long as we continue to operate.

What if they didn't pay their taxes? And by the way, they don't pay any property tax in the county because they're 501(c)(3).  But what if they didn't renew their charter or did something else that allowed them to stay in operation? You know what would happen? The government would shut them down. They might take some of the $30 million they've got sitting in the

- 11 -

bank.

> How perpetual is that? Would [counsel for the Sanctuary] come along and say, "Oh no, we put 'perpetual.' It's got to last forever." They'd say, "Huh-uh. Not unless you follow the rules." It wouldn't be so perpetual, would it?

The Sanctuary's counsel objected after the jury retired for a comfort break, specifically asking the trial court to instruct the jury that the comment "was not proven and is inaccurate." Counsel for the Sanctuary then drafted a curative instruction, which the trial court stated was "fair." The trial court noted, however, that it was "very disturbed" by the comment and that if the Sanctuary "made a motion right now about this whole trial, I would probably grant it." The trial court thereafter read the curative instruction "as written" to the jury:

> . . . Members of the jury, during his closing argument, [counsel for Ms. Buckley] made reference to a matter as if it was a fact[,] which was not introduced at trial. In addition, that comment was not accurate. He mentioned that the Sanctuary does not pay property taxes in Lewis County. That is inaccurate. The Sanctuary does pay property taxes in Lewis County. I am instructing you that it was in error for [counsel] to present that to you, and I am instructing you to disregard it.

The Sanctuary was then permitted to give its rebuttal. Thereafter, the trial court gave additional instructions to the jury, including an admonishment to consider only the evidence and not the arguments of counsel.

Eventually, the jury returned a verdict in favor of Ms. Buckley. In its motion for a new trial, the Sanctuary argued that this comment was "materially prejudicial," as it was an appeal to passion, prejudice, and sentiment. As such, the Sanctuary argued that a new trial was necessary.

A central dispute with regard to this ground involves whether the Sanctuary waived its argument concerning statements made in closing argument. Ms. Buckley's argument as to waiver is two-fold. First, she asserts that the Sanctuary waived this argument by failing to make a contemporaneous objection. Second, she contends that the Sanctuary waived the argument by accepting a curative instruction and declining to seek a mistrial. Based on this waiver, Ms. Buckley asserts that the trial court was wrong to consider the Sanctuary's later argument that these comments necessitated a new trial. While we disagree with Ms. Buckley on the former, we agree as to the latter.

We begin with the issue of a contemporaneous objection. "It is a well known and well accepted rule that a party must complain and seek relief immediately after the

occurrence of a prejudicial event[.]" *Gotwald v. Gotwald*, 768 S.W.2d 689, 694 (Tenn. Ct. App. 1988) (citing *Spain v. Connolly*, 606 S.W.2d 540, 543–44 (Tenn. Ct. App. 1980)). Generally, objections to the admission of evidence are waived in the absence of a "contemporaneous" objection. *See* Tenn. R. Evid. 103(a)(1) (stating that error may not be predicated on the admission of evidence unless "a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context[.]"); *State v. Sutton*, 562 S.W.2d 820, 825 (Tenn. 1978) ("Without a contemporaneous objection, the error is waived."); *State v. Halake*, 102 S.W.3d 661, 669 (Tenn. Crim. App. 2001) (citing *Grandstaff v. Hawks*, 36 S.W.3d 482 (Tenn. Ct. App. 2000)) ("In order to challenge the introduction of evidence at trial on appeal, counsel must make a contemporaneous objection to the admission of the evidence."). "An objection is contemporaneous if counsel makes the objection in a motion in limine or at the time the objectionable evidence is about to be introduced." *Id.*; *see also Garner's Dictionary of Legal Usage* 212 (3rd ed. 2009) (defining "contemporaneous" as "belonging to the same time or period; occurring at about the same time").

But "[a] contemporaneous objection does not always mean an immediate 'jump up' objection." *Mercer v. Vanderbilt Univ., Inc.*, No. M2000-00801-COA-R3-CV, 2002 WL 31728864, at *7 (Tenn. Ct. App. Dec. 5, 2002), *aff'd in part, rev'd in part*, 134 S.W.3d 121 (Tenn. 2004) (citing Tenn. R. Evid. 614(c) (noting that certain objections involving questioning by the trial judge "may be made at the time or at the next available opportunity when the jury is not present")). Rather, "[c]ounsel's need to 'jump up' depends on the nature of what is being objected to." *Id.* Treatises have therefore recognized that "[t]here is authority to the effect that counsel may wait until the end of argument and state his or her objections then." Jacob A. Stein, *The Law of Closing Argument* § 1:113 & fn.32 (2020-2021 ed.) (collecting cases). Indeed, the Tennessee Court of Criminal Appeals has held that an objection was properly made when it "occurred at the end of the rebuttal argument, rather than as an interruption immediately when the prosecutor made the argument." *State v. Clymer*, No. M2016-01124-CCA-R3-CD, 2017 WL 5197292, at *13 (Tenn. Crim. App. Nov. 9, 2017) (holding that in this situation the objection was not waived because "the Defendant promptly brought the issue to the court's attention and that the court had the opportunity to consider whether curative measures were necessary").

In this case, the record demonstrates that the Sanctuary lodged its objection to the allegedly improper statement following the close of Ms. Buckley's closing argument. The trial court sustained this objection and granted the Sanctuary its requested curative instruction. "[I]t is well settled that in reviewing a trial court's decision with respect to arguments made by counsel, including those made in closing argument, this Court applies an abuse of discretion standard." *Monypeny v. Kheiv*, No. W2014-00656-COA-R3-CV, 2015 WL 1541333, at *10 (Tenn. Ct. App. Apr. 1, 2015) (citing *Perkins v. Sadler*, 826 S.W.2d 439, 442 (Tenn. Ct. App. 1991)). Although the Sanctuary delayed somewhat in lodging its objection to the allegedly improper argument, we conclude that the above authorities provide support for the trial court's decision to consider the

Sanctuary's objection and request for a curative instruction. The trial court therefore did not abuse its discretion in considering the objection, and the timing of the Sanctuary's objection does not prevent it from relying on this argument as the basis for a new trial on appeal.

Ms. Buckley's argument concerning the Sanctuary's failure to request a mistrial has more merit. Here, the Sanctuary specifically requested a curative instruction be given to the jury to disregard the offending statement by Ms. Buckley's counsel. The trial court granted the request for a curative instruction, but informed the Sanctuary that it was inclined to grant a mistrial if requested. The Sanctuary opted not to seek a mistrial and proceeded on with the trial. After a verdict was returned in Ms. Buckley's favor, however, the Sanctuary filed a motion for new trial, arguing that the comments "were already so prejudicial that some could never be cured." The trial court eventually granted the motion for new trial. Later, her written order denying the motion for recusal explicitly stated that the basis for this ruling was counsel's improper comment on the Sanctuary's purported failure to pay property taxes.

Under Rule 36(a) of the Tennessee Rules of Appellate Procedure, we generally do not grant relief "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." Based on this rule, the Tennessee Supreme Court has held that where the trial court gave a curative instruction concerning inflammatory statements by counsel, but the appellants did not request a mistrial, the appellants "waived any further action by the trial court" on the basis of the allegedly improper comments. *State v. Hall*, 976 S.W.2d 121, 157 (Tenn. 1998) (citing Tenn. R. App. P. 36(a)). Similarly, the Tennessee Supreme Court has opined that "'[i]f a party fails to request a curative instruction, or, if dissatisfied with the instruction given and [sic] does not request a more complete instruction, the party effectively waives the issue for appellate purposes.'" *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 135 (Tenn. 2004) (quoting *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997) (holding that where the appellants "seemed satisfied with the trial court's statement to the jury" they could not take issue with the allegedly improper argument on appeal)).

The overlap between curative instructions and mistrial has been considered previously by this Court:

> Statements made by counsel can be cured by the use of curative instructions. *Mitchell v. Jennings*, 836 S.W.2d 575, 581 (Tenn. [Ct.] App. 1992). Appellate courts must presume the jury followed the instructions of the trial court unless there is proof to the contrary. *Johnson v. Lawrence*, 720 S.W.2d 50, 60 (Tenn. [Ct.] App. 1986). Here, there is no proof in the record that the jury did not follow the court's curative instruction. Moreover, there was no request for a mistrial. As previously stated in this opinion, failure to request a mistrial as soon as its

- 14 -

grounds are known results in waiver. ***Spain v. Connolly***, 606 S.W.2d 540, 544 (Tenn. [Ct.] App. 1980).

***Oldham v. Pickett***, No. 01-A-01-9211-CV00441, 1993 WL 95590, at *2 (Tenn. Ct. App. Apr. 2, 1993). With regard to mistrials more specifically, we have explained as follows:

> Where a party has knowledge of facts which would justify a mistrial, it is his duty to bring such facts to the attention of the trial court immediately and he is not permitted to suppress such information until he has received an adverse decision. That is to say, a party may not save an infirmity in the proceedings as an "ace in the hole" to be used in case of an adverse decision or suppressed in event of a favorable decision. A mistrial must be demanded as soon as its grounds are known, otherwise, it is waived.

***Spain***, 606 S.W.2d at 543–44 (citation omitted).

In this case, we must conclude that the Sanctuary engaged in the exact type of gamesmanship that was prohibited in ***Spain***. Here, the trial court expressly informed the Sanctuary that it was likely to grant a mistrial if requested. The Sanctuary chose not to exercise that option. Unlike a typical case, however, we need not guess as to the Sanctuary's motive for using that tactic. Rather, the Sanctuary admitted in its own memorandum in support of the motion for a new trial that it did not want a mistrial because "it thought that it was winning." But once the jury ruled against it, the Sanctuary then took the position that the statements were so prejudicial that they "could never be cured" and that the jury "simply could not 'un-ring' the . . . bell[.]"

In a similar circumstance, this Court held that an appellant could not rely on allegedly improper statements made to the jury when the appellant refused a mistrial. *See* ***Harwell v. Walton***, 820 S.W.2d 116 (Tenn. Ct. App. 1991). In ***Harwell***, the appellant argued that it was improper for the jury to hear evidence that the appellee had paid her repair bills, as she argued this evidence was highly prejudicial and improper. ***Id.*** at 119–20. We held, however, that even if the comments were improper, the appellant had waived her argument because she did not ask for a mistrial and declined the trial court's invitation to seek a mistrial on four occasions. ***Id.*** at 120. As we explained, the appellant "clearly did not want a mistrial, therefore, all objections to such are now waived." ***Id.***

Clearly, the Sanctuary was "satisfied" with only the use of a curative instruction when it believed that it was winning the case. ***Griffis***, 964 S.W.2d at 599. As such, like the appellant in ***Harwell***, it declined the trial court's express invitation to seek a mistrial. *See* ***Harwell***, 820 S.W.2d at 120. Only after the adverse judgment did the Sanctuary take the position that a curative instruction could never cure the error committed by Ms. Buckley's counsel. "As other courts reviewing similar circumstances have held: 'One cannot know of [allegedly] improper [] conduct, gamble on a favorable result by remaining silent as to

- 15 -

that conduct, and then complain that he or she guessed wrong and does not like the outcome.'" ***Davis v. Tennessee Dep't of Emp. Sec.***, 23 S.W.3d 304, 313 (Tenn. Ct. App. 1999) (quoting ***State v. Lotter***, 255 Neb. 456, 586 N.W.2d 591, 610 (Neb. 1998)) (involving allegations of judicial bias). That is exactly what the Sanctuary did in this case.

Finally, even assuming, arguendo, that the Sanctuary was entitled to rely on this argument notwithstanding its waiver, we note that the jury is presumed to follow the trial court's curative instruction. ***Payne v. CSX Transportation, Inc.***, 467 S.W.3d 413, 444 (Tenn. 2015) ("[W]e presume that the jury follows the curative instructions of the trial judge."). The comment by Ms. Buckley's counsel occurred during what was transcribed as an eighteen-page argument. The Sanctuary's purported exemption from property taxes was referenced a single time, rather than in a persistent manner. To the extent that the comments were improper, the trial court gave both a specific and a general instruction to the jury to ignore the comments. This case is therefore not analogous to cases involving numerous improper statements that were not ameliorated by the use of a curative instruction. *See, e.g.*, ***Doochin v. U.S. Fid. & Guar. Co.***, 854 S.W.2d 109, 116 (Tenn. Ct. App. 1993) ("As a consequence, of the trial judge's failure to give a curative instruction, the jury retired with [a false] impression[.]"). Moreover, the Sanctuary's brief provides no argument to support a finding that it rebutted the presumption that the jury followed these instructions in any way. Likewise, the Sanctuary's brief provides little argument beyond unsupported hyperbole as to how this comment prejudiced the jury against it in such a manner that the corrective instruction was insufficient.[15] *Cf.* ***State v. Banks***, 271 S.W.3d 90, 132 (Tenn. 2008) ("[W]hen flagrantly improper arguments are made, the trial court, with or without objection, should step in and take proper curative action. . . . Some arguments may be so exceptionally flagrant that they constitute plain error and provide grounds for reversal even if they were not objected to.").

While the trial court's decision to grant a new trial is discretionary in nature, a trial court abuses its discretion when it applies an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. ***Funk***, 570 S.W.3d at 210. Here, the trial court allowed

---

[15] For example, the Sanctuary describes the allegation that it did not pay property taxes as a "potential prejudicial Achilles heel[.]" No caselaw is cited that held that a single comment of this nature was sufficient to necessitate a new trial when a curative instruction was given and no evidence was presented that the jury ignored the instruction. We note that the trial court's statements during the hearing on the motion for a new trial did indicate that it was very troubled by the improper comment, given prior hearings in which the local community's distaste for the Sanctuary's tax status was discussed. The trial court, however, chose not to include any findings to this effect in its written orders. "'It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts— and that the appellate court reviews the trial court's written orders.'" ***Williams v. City of Burns***, 465 S.W.3d 96, 119 (Tenn. 2015) (quoting ***Anil Constr. Inc. v. McCollum***, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at \*8 (Tenn. Ct. App. Aug. 7, 2014)); *see also* ***Smith v. UHS of Lakeside, Inc.***, 439 S.W.3d 303, 317 (Tenn. 2014) (declining to construe the trial court's scattered comments throughout a hearing as providing the basis for its ruling).

the Sanctuary to hold its argument that the improper comment could not be cured as an ace-in-the-hole against the jury's verdict, a decision that does not comport with Tennessee law. Moreover, nothing indicates that the trial court considered or applied the presumption that the jury followed the curative instructive when it ordered a new trial. As such, to the extent that the trial court relied on the single statement concerning the Sanctuary's purported exemption from property taxes as a basis for awarding a new trial, this decision was in error.

## 2. Weight of the Evidence

The second ground for relief raised in the Sanctuary's motion was that the weight of the evidence did not support the verdict. Our review of this issue is somewhat hampered, as neither party devotes much argument to whether this ground was sufficient to warrant the award of a new trial. The Sanctuary's brief argues that this was an independent basis for affirming the grant of a new trial, but devotes no legal argument to an analysis of the weight of the evidence in support of this ground. Yet, the Sanctuary argues that we should affirm the grant of the new trial on this basis because Ms. Buckley does not provide sufficient argument in her appellate briefs to show that this was not a proper basis for granting the new trial. We agree that Ms. Buckley did not address this question in her initial appellate brief, as she framed her issues as only relating to the prejudicial comment ground for granting a new trial. Even after this issue was raised by the Sanctuary, Ms. Buckley did not address the merits of this ground in her reply brief, instead insisting that the only basis for the trial court's decision was its concern regarding the alleged prejudicial statements made during closing arguments.

Although not cited by the Sanctuary, we note that Tennessee law does provide that where a trial court provides more than one separate and independent ground for its judgment and a party fails to appeal one or more of the independent grounds, we must affirm the judgment of the trial court on the ground that was not challenged on appeal. *See* ***Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC***, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *7 (Tenn. Ct. App. Aug. 6, 2018) ("Generally, where a trial court provides more than one basis for its ruling, the appellant must appeal all the alternative grounds for the ruling."); ***Duckworth Pathology Grp., Inc. v. Reg'l Med. Ctr. at Memphis***, No. W2012-02607-COA-R3-CV, 2014 WL 1514602, at *12 (Tenn. Ct. App. Apr. 17, 2014) ("Because Duckworth failed to appeal all of the alternative grounds for dismissal in the trial court's order, the Med's argument that we need not consider the two issues Duckworth presented on appeal is well-taken."); *see also* 5 Am. Jur. 2d *Appellate Review* § 718 ("[W]here a separate and independent ground from the one appealed supports the judgment made below, and is not challenged on appeal, the appellate court must affirm.").

The problem with this argument is readily apparent: in denying the motion to recuse, the trial court insisted that the sole reason for the grant of the new trial was the prejudicial comment made by Ms. Buckley's counsel during closing arguments. As such, a fair reading

of the record cannot lead to the conclusion that the trial court actually provided separate and independent bases for the grant of the new trial. That is not to say that we are untroubled by Ms. Buckley's failure to brief this issue, given the controlling authority requiring review of all grounds raised in the motion for new trial. *See Mize*, 468 S.W.2d at 736. But we must note that the Sanctuary's effort to brief the substantive merits of this issue was similarly lackluster. In this situation, we decline the Sanctuary's invitation to affirm the grant of the motion for a new trial on the basis of Ms. Buckley's purported waiver. We therefore will consider the merits of this basis for granting a new trial despite both parties' deficient briefing.

Here, the trial court's order granting the new trial provides no explicit basis for that decision. And the trial court declined to explain its reasoning despite being asked in the motion to alter or amend. Looking at these orders alone, we have no findings to support a conclusion that the trial court's decision to grant a new trial was based on its assessment of the weight of the evidence. Generally, in the face of the trial court's silence, we would presume that the trial court in fact did "weigh the evidence and exercise[] her function as thirteenth juror." *Blackburn*, 2008 WL 2278497, at *7. Thus, "the granting of a new trial indicates that the [t]rial [j]udge is dissatisfied." *Ladd v. Honda Motor Co.*, No. 01A-01-9309-CV-00399, 1994 WL 189119, at *3 (Tenn. Ct. App. May 13, 1994) (citing *Wileman v. Mayor & Aldermen of Town of Tullahoma*, 29 Tenn.App. 172, 177 195 S.W.2d 325, 327 (Tenn. Ct. App. 1946)). But as previously discussed, the situation here is murky, as the trial court appears to have disavowed this basis for the grant of the motion for a new trial when it denied Ms. Buckley's motion to recuse. As a result of this unusual circumstance, we are not persuaded that an evaluation of the evidence was among the reasons for the grant of the motion for a new trial. Instead, the trial court's apparent disavowal of the weight of the evidence as a basis for the grant of a new trial leads inexorably to the conclusion that it did not grant the Sanctuary's motion on this basis. *Cf. Ladd*, 1994 WL 189119, at *3 (holding that the trial court had not performed his duty to weigh the evidence as thirteenth juror where the written order was silent but "[o]ral remarks of the[t]rial [j]udge at the hearing of the motion for new trial specifically indicate a disinclination to decide the issue of his satisfaction with the verdict"). Thus, to hold that the presumption applies in favor of the trial court in this case would be akin to proceeding under false pretenses.

In another case in which the record made clear that the trial court did not perform its duty as the thirteenth juror, we held that it was appropriate to vacate the judgment of the trial court and remand for the performance of this duty. *See Ladd*, 1994 WL 189119, at *5 (holding that where it was "evident that the [t]rial [j]udge ha[d] not performed his duty to weigh the evidence as 13th juror and to concur with or set aside the verdict of the jury" the appropriate remedy was to vacate the judgment and remand for the trial court to "consider and rule upon the other grounds stated in the motion for new trial"). But the issue is complicated in this case by the fact that this case was assigned to be heard by a different judge for all further proceedings. *Buckley I*, 2020 WL 3980437, at *6. As such, were we

- 18 -

to remand this case for additional proceedings as to the motion for new trial, a new judge would be required to decide that issue. This situation has obvious downsides:

> "As the thirteenth juror, the trial judge is required to approve or disapprove the verdict, to independently weigh the evidence, and to determine whether the evidence preponderates in favor of or against the jury verdict." ***Loeffler v. Kjellgren***, 884 S.W.2d 463, 468–69 (Tenn. Ct. App. 1994); *see* ***Ridings v. Norfolk Southern Ry. Co.***, 894 S.W.2d 281, 288 (Tenn. Ct. App. 1994). Having no opinion is not an option. ***Sherlin v. Roberson***, 551 S.W.2d 700, 701 (Tenn. Ct. App. 1976). To approve the verdict is to "reach[ ] the same verdict as the jury after independently weighing the evidence and passing upon the issues." ***Holden v. Rannick***, 682 S.W.2d 903, 906 (Tenn. 1984). . . . We thus arrive at the conclusion that a judge who does not see and hear the witnesses is at a significant disadvantage as thirteenth juror and absent strong indications he still found a way to independently weigh the evidence we should set aside the judgment and order a new trial. *See* Tenn. R. Civ. P63, 1993 Advisory Commission Comment, *citing* ***State v. Bilbrey***, 858 S.W.2d 911 (Tenn. Crim. App. 1993).

***Overton v. Lowe***, No. E2007-00843-COA-R3-CV, 2009 WL 1871946, at *7 (Tenn. Ct. App. June 30, 2009). Consequently, if this case were remanded to the trial court for a reevaluation of the evidence, the newly assigned trial judge would be under the same limitations as posed in this Court. Given that this case originated over a decade ago, has had two jury trials, and concerns the ownership of a living being, we see no benefit to delaying review of this issue so that the new trial judge can reevaluate the case in the same manner afforded by our review.

However, the trial court's repudiation of the weight of the evidence as the basis for the new trial impacts the standard of review as to this ground. As previously discussed, the trial court's decision to grant or deny a motion for a new trial is typically reviewed under the abuse of discretion standard. ***Ali***, 145 S.W.3d at 564. In some instances, however, this Court has held that we are unable to afford the trial court's discretionary decisions the proper deference in the absence of some indication as to how the trial court reached its conclusion. *See, e.g.,* ***In re Raylan W.***, No. M2020-00102-COA-R3-PT, 2020 WL 4919797, at *7 (Tenn. Ct. App. Aug. 20, 2020); ***Carnett v. PNC Bank, NA***, No. W2015-01677-COA-R3-CV, 2016 WL 402495, at *4 (Tenn. Ct. App. Feb. 2, 2016). In other words, "[w]e cannot determine whether the trial court applied an incorrect legal standard or relied on reasoning that caused an injustice because we do not know what legal standard the court applied, or what reasoning it employed." ***Gooding v. Gooding***, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015); *see also* ***In re Noah J.***, No. W2014-01778-COA-R3-JV, 2015 WL 1332665, at *5 (Tenn. Ct. App. Mar. 23, 2015). In this situation, "we may conduct a de novo review of the record to determine where the preponderance of the evidence lies[.]" ***Id.*** at 783.

The same is true in this case. It would be farcical to apply the abuse of discretion standard in favor of the grant of the motion for a new trial on a basis that the trial court rejected. Simply put, we cannot presume that the trial court granted the motion for a new trial on the basis that the weight of the evidence is contrary to the verdict when the trial court "put into the record" that this was not the basis of its ruling. *Cf.* ***Mayfield v. Mayfield***, 395 S.W.3d 108, 115 (Tenn. 2012) ("In determining whether the trial court abused its discretion, an appellate court should presume that the trial court's decision is correct and should review the evidence in the light most favorable to the decision.") (quotation marks, brackets, and internal citations omitted). We therefore will independently review the record to determine whether this ground for the Sanctuary's motion for new trial has merit. *See* ***In re Raylan W.***, 2020 WL 4919797, at \*7 (reviewing the trial court's denial of a Rule 60.02 motion "independently" and without deference, given the trial court's failure to explain its application of the required factors to its discretionary decision). Accordingly, the question we answer is the same question posed to the trial court when presented with the motion for new trial: "whether the evidence 'preponderates' in favor of or against the verdict." ***Blackburn***, 2008 WL 2278497, at \*6.

Turning to that question, we note that the Sanctuary's argument rests solely on question 3 from the jury verdict form. Question 2 asked whether the Sanctuary "maintain[ed] a policy that permanent residents . . . are not removable by their owners"; the jury answered in the affirmative. Question 3 asked whether "Ms. Buckley agreed to transfer Tarra under the same policy referenced in question #2 and whether Tarra is not removable by Ms. Buckley"; the jury answered in the negative.

According to the Sanctuary, the evidence presented demonstrates that Tarra was subject to this policy and therefore she could not be removed unilaterally by Ms. Buckley. In support, the Sanctuary cites testimony from several witnesses that it was their belief that Tarra was subject to the Disposition Policy. Moreover, the Sanctuary contends that Ms. Buckley never testified that Tarra was not subject to the Disposition Policy.

In response to the motion for a new trial, Ms. Buckley made several arguments. First, she asserted that because the claim of ownership was raised by the Sanctuary, it was the Sanctuary's burden to prove, by a preponderance of evidence, its claim regarding the Disposition Policy. Indeed, the instructions provided to the jury on this issue state as follows:[16]

> The defendant [the Sanctuary] has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues:

---

[16] Nothing in the record or in the appellate briefs submitted to this Court indicate that the Sanctuary ever objected to the jury instructions given by the trial court.

- 20 -

(1) that permanent residents of The Sanctuary are not removable, and
(2) that Ms. Buckley agreed to transfer Tarra under those same policies.

Likewise, Ms. Buckley argues that the jury was required to find not that the individuals associated with the Sanctuary believed that Tarra was subject to the policy, but that Ms. Buckley "agreed to transfer" Tarra pursuant to that policy. Indeed, the jury verdict form provides that the question to be answered by the jury was whether "Ms. Buckley agreed to transfer Tarra under the [Disposition] policy[.]" Ms. Buckley contends that none of the testimony cited by the Sanctuary in support of its motion for a new trial provides proof that she affirmatively agreed to transfer Tarra pursuant to the Disposition Policy.

On this point, we must agree with Ms. Buckley. Here, the Sanctuary's witnesses indeed testified without dispute to their belief that Tarra was subject to the policy. They admitted, however, that Tarra came to the Sanctuary prior to the implementation of the policy, and they offered no proof that Ms. Buckley ever affirmatively agreed to transfer Tarra under the policy. Instead, they only offered proof that Tarra was generally treated the same as all the other elephants at the Sanctuary and part of the Sanctuary family. Indeed, at least one of the witnesses relied upon by the Sanctuary testified that she could not provide proof as to whether Ms. Buckley agreed to have Tarra be bound by the policy because that witness was a child living in another country when the transfer of Tarra and the implementation of the Disposition Policy occurred.

In contrast, Ms. Buckley testified on cross-examination that she did not agree to apply the Disposition Policy to Tarra:

Q. You're just saying—I think you're just saying the [Disposition Policy] doesn't apply to me, doesn't apply to Tarra; is that right?
A. Yes, it does not apply to Tarra because Tarra came to the property prior to any of these policies being envisioned, designed, and written. They didn't exist. They didn't apply to her. We were a fledgling organization and we were figuring it out as we went along.

Moreover, Ms. Buckley points to the documents that were executed in connection with Tarra's transfer, compared to the documents relative to other elephants housed at the Sanctuary. For example, on the March 1995 acquisition form detailing the transfer of Tarra to the Sanctuary, Ms. Buckley indicated that Tarra was to be a permanent resident, but undisputedly included an additional handwritten notation that Tarra's possession was merely a "loan." According to Ms. Buckley, the Sanctuary was using a stock form at that time that gave only two options for residency: temporary or permanent. Ms. Buckley testified that Tarra was permanent in that she would not be leaving the Sanctuary to perform. But Ms. Buckley testified that she added the "loan" notation to ensure that her

- 21 -

ownership of Tarra was not questioned:

> Well, I have a funny feeling that— "Why is it only two options?" But I didn't even know what the third option—what the word would be. So I knew that Tarra's on loan here. She belongs to me. She's always belonged to me. I'm not giving her away. She's coming here to live, but she's on loan.

To illustrate this point, Ms. Buckley pointed to an express contract for the permanent loan of another elephant. This document provided the Sanctuary with the "full and exclusive" right to "direct, manage, control and make decisions for [the elephant's] care and comfort" subject only to certain exclusions contained in the contract. No such document was ever executed for Tarra and Ms. Buckley testified that for her to sign such a document "giving away" Tarra voluntarily would be "unthinkable[.]"

The Sanctuary argues, however, that this testimony should be stricken because it contradicts a prior sworn interrogatory given by Ms. Buckley. Specifically, during discovery, the following interrogatory was posed to Ms. Buckley:

> 33. Identify all policies and procedures of The Sanctuary that permit you to remove Tarra from the Sanctuary.
> RESPONSE: See The Elephant Sanctuary Acquisition and Disposition Policy; see also The Elephant Sanctuary Loan Policy, both provided by [the Sanctuary] in its discovery responses.

This interrogatory response was also mentioned in Ms. Buckley's testimony:

> Q. . . . The disposition policy that your interrogatory answer says applies to your ability to remove Tarra starts with the first two words "All elephants," does it not?
> A. I believe it does.

According to the Sanctuary, because these statements conflict with Ms. Buckley's later position that the Disposition Policy did not apply to Tarra, they are negated by the cancellation rule.

"Tennessee follows the rule that contradictory statements by the same witness regarding a single fact cancel each other out." *Church v. Perales*, 39 S.W.3d 149, 169–70 (Tenn. Ct. App. 2000) (citing *State v. Matthews*, 888 S.W.2d 446, 449 (Tenn. Crim. App. 1993)); *see also Helderman v. Smolin*, 179 S.W.3d 493, 501 (Tenn. Ct. App. 2005). "If determined by the trial court to be contradictory, the statements by the witness are considered to be 'no evidence' of the fact sought to be proved." *Helderman*, 179 S.W.3d at 501 (quoting *Wilson v. Patterson*, 73 S.W.3d 95, 103–04 (Tenn. Ct. App. 2001)). The cancellation rule only applies, however, "when the inconsistency in the witness's testimony

- 22 -

is unexplained and when neither version of his testimony is corroborated by other evidence." ***Taylor v. Nashville Banner Publ'g Co.***, 573 S.W.2d 476, 483 (Tenn. Ct. App. 1978). As a result, we have observed that the cancellation rule "is actually more narrow than it would appear to be" and "[c]orroboration . . . is also frequently found, thereby blocking the cancellation rule[.]" ***Aurora Loan Servs., LLC v. Woody***, No. W2014-00761-COA-R3-CV, 2014 WL 7463032, at *12 (Tenn. Ct. App. Dec. 30, 2014*), perm. app. denied* (Tenn. June 16, 2015) (quoting Cohen, et al., *Tennessee Law of Evidence* § 6.07[5]).

Based on the foregoing, we decline to apply the cancellation rule in this case. To the extent that Ms. Buckley's trial testimony and her interrogatory responses conflict, we conclude that Ms. Buckley's trial testimony was corroborated. In particular, the 1995 Acquisition Form that Ms. Buckley executed with regard to Tarra demonstrates that Ms. Buckley intended Tarra's acquisition by the Sanctuary to constitute only a loan. This document therefore corroborates Ms. Buckley's testimony, and indeed her position throughout the pendency of this case, that she never intended to transfer any ownership rights of Tarra to the Sanctuary or to apply the Disposition Policy to Tarra in any manner. Given the corroboration of Ms. Buckley's testimony, the cancellation rule is inapplicable.

In sum, we conclude that the evidence does not preponderate against the jury's verdict. In general, "for the evidence to preponderate against [the fact-finder's] finding of fact, it must support another finding of fact with greater convincing effect." ***Spann v. Am. Exp. Travel Related Servs. Co.***, 224 S.W.3d 698, 707 (Tenn. Ct. App. 2006) (citing ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000)). Here, Ms. Buckley testified that she never agreed to subject Tarra to the Disposition Policy that was created after Tarra was transferred to the Sanctuary. Even setting aside this testimony, however, we cannot conclude that the Sanctuary met its burden to show that that the weight of the evidence supports a finding that Ms. Buckley agreed to subject Tarra to the Disposition Policy. Documents in the record corroborate that Tarra was merely loaned to the Sanctuary, but that ownership was never transferred. Moreover, while there was testimony from the Sanctuary that indicates that Tarra was treated the same as the other elephants housed there, none of the Sanctuary's witnesses were able to testify that Ms. Buckley ever affirmatively agreed that Tarra was subject to the Disposition Policy, particularly given that this policy was not in place when Tarra came to the Sanctuary. Under these circumstances, we decline to disturb the jury's verdict on the basis that the weight of the evidence is otherwise.

### 3. Interests of Justice

The final basis for the Sanctuary's motion for a new trial was that it would be in the interests of justice. Specifically, the Sanctuary argued in its motion for a new trial that the testimony exclusively demonstrated that it was in Tarra's best interest to remain at the Sanctuary and that a new trial was therefore warranted. Again, the trial court's ruling gives no indication that it was persuaded by this argument or that it even considered it. As such, we will independently review the record.

In deciding a motion for new trial, the trial court has wide latitude to "set the verdict aside when it is against the weight of the evidence or when the interests of justice would be served thereby." *Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977). We cannot agree, however, that the Sanctuary has demonstrated that the interests of justice compel the grant of a new trial in this case.

Here, the only two theories presented to the jury were: (1) that Tarra had been gifted to the Sanctuary; and (2) that Tarra was subject to the Disposition Policy. Although the trial court stated during trial that Tarra's best interest was at issue, this question was simply not posed to the jury. If the Sanctuary wished an additional instruction be given to the jury on this issue, it could have litigated that issue in the trial court. *Cf. Hatfield v. Allenbrooke Nursing & Rehab. Ctr., LLC*, No. W2017-00957-COA-R3-CV, 2018 WL 3740565, at *39 (Tenn. Ct. App. Aug. 6, 2018), *perm. app. denied* (Tenn. Jan. 17, 2019) (quoting *Grandstaff v. Hawks*, 36 S.W.3d 482, 489 n.9 (Tenn. Ct. App. 2000)) ("[T]he rule excusing a party from objecting to a jury instruction applies only in the event of an erroneous instruction: 'it does not relieve a party of the responsibility to bring the trial court's attention to material omissions in the instructions.'"). And we typically do not allow parties to raise new legal theories in the motion for new trial. *See State v. Vance*, 596 S.W.3d 229, 253 (Tenn. 2020) (citing *State v. Adkisson*, 899 S.W.2d 626, 634-35 (Tenn. Crim. App. 1994) (holding that a party generally "cannot assert a new or different theory to support the objection in the motion for new trial"); *cf. McCandless v. Oak Constructors, Inc.*, 546 S.W.2d 592, 599 (Tenn. Ct. App. 1976) ("[I]f appellants deemed the charge to be deficient in respect to possible theories of recovery or defense, it was their privilege and duty to specially request appropriate additions to the charge. Not having done so, they may not complain of the omission on appeal.").

Moreover, even considering the argument that it is not in Tarra's best interest to be removed from the Sanctuary, we cannot conclude that it provides an appropriate basis for relief. In particular, we note that Ms. Buckley testified repeatedly that it was not her present intention to remove Tarra from the Sanctuary. This fact is generally supported by the fact that Ms. Buckley's initial complaint only sought visitation with Tarra, rather than her removal. It was the Sanctuary, rather than Ms. Buckley, that first raised the issue of ownership of Tarra and the corresponding right to her disposition. Here, the testimony indicates that Ms. Buckley, along with other individuals, went to monumental effort to create the Sanctuary in large part to provide a home for Tarra. Nothing in the record demonstrates that Ms. Buckley has ever acted against Tarra's best interests since the creation of the Sanctuary. As such, we decline to disturb the jury's verdict on the basis of the Sanctuary's rather conclusory argument that the interests of justice compel the contrary result.

In sum, we conclude that none of the arguments raised in the Sanctuary's motion for a new trial have merit. As such, the trial court abused its discretion in granting the

motion a for new trial. *See* *Mize*, 468 S.W.2d at 736 (noting that the grant of a new trial may be reversed if based on "some invalid reason"). This case is therefore remanded to the trial court for the entry of an order consistent with the jury's verdict.

## V. CONCLUSION

The judgment of the Lewis County Chancery Court is reversed, and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee, The Elephant Sanctuary in Tennessee, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE
